**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-11393

_____


UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

VERSUS

DANIEL FLORES-OCHOA,

                              Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Texas
_____

April 24, 1998

Before GARWOOD, SMITH, and EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


I.

In June 1995, Daniel Flores-Ochoa pleaded guilty to possession of marihuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).  On August 28, 1995, he was sentenced to fifty months' imprisonment and four years' supervised release. This sentence was ten months less than the mandatory minimum sentence of sixty months, but the court applied a provision of the Violent Crime Control and Law Enforcement Act of 1994 (the "Act") that allows a sentence lower than the mandatory minimum in certain cases.

At the time of the sentencing hearing, the Sentencing Commission had proposed U.S.S.G. § 2D1.1(b)(4) (1995), which provided for a two level reduction in the offense level if the criteria described in the Act are met. If accepted by Congress, the guideline would have become effective on November 1, 1995. The parties agree that, had Flores-Ochoa been sentenced when § 2D1.1(b)(4) was in effect, he would have qualified for the two-level reduction.

Although Flores-Ochoa did not initially appeal his sentence, he filed a 28 U.S.C. § 2255 motion on September 12, 1996, alleging, among other things, that he had received ineffective assistance of counsel because he was not informed of his right to appeal. After a denial of the motion, an appeal to this court, a remand, and an evidentiary hearing, the district court concluded that Flores-Ochoa was correct and that he was therefore entitled to an out-of-time appeal.

We now review, in accordance with this decision of the district court, Flores-Ochoa's appeal of his original sentence on the ground that the Sentencing Commission should have made § 2D1.1(b)(4) retroactive. This is a new argument, not made before the sentencing court, that must be reviewed under the plain error standard of *United States v. Olano*, 507 U.S. 725 (1993), and *United States v. Calverley*, 37 F.3d 160, 162 (5th Cir. 1994) (en banc).

We do not accept Flores-Ochoa's contention that we may review *de novo* the Commission's allegedly *ultra vires* act because it affects the jurisdiction of the sentencing court. Irrespective of whether the Commission acted within its authority, the district court had ample authority to sentence Flores-Ochoa, and the only question is whether the court properly interpreted the Guidelines. Accordingly, we review this argument under a plain error standard.

Flores-Ochoa also sought, in his § 2255 motion, to vacate his conviction on the grounds that his trial counsel erred by failing to ask for a reduction for mitigating role and by failing to move for a downward departure under the safety valve provision. In addition to his out-of-time appeal, Flores-Ochoa now argues, apparently relying upon the record in the § 2255 hearing, that his counsel was ineffective for failing to ask for a continuance until after the effective date of § 2D1.1(b).

For purposes of this appeal, we will assume, *arguendo*, that Flores-Ochoa's allegation in the district court that his trial counsel erred in failing to pursue a "downward departure" under the safety valve encompassed a claim that counsel erred in failing to seek a continuance. Assuming, without deciding, that this is the correct approach, we review the denial of § 2255 relief *de novo*.

B.

Flores-Ochoa argues that Congress demonstrated its intent to

3

have the Commission's guidelines take effect simultaneously with the effective date of the Act. This argument has some merit; the Act states that the Commission "shall promulgate guidelines . . . to carry out the purpose of this section," and also permits the Commission to promulgate emergency guidelines if "necessary to do so" in order that the newly promulgated guidelines "may take effect on the effective date" of the safety valve amendment. Pub. L. 103-322 § 80001(b) (1994).

In accordance with this request, the Commission promulgated U.S.S.G. § 5C1.2 and accompanying application notes, effective September 23, 1994. This guideline, which became effective on the effective date of the Act, mimicked the language of the Act, allowing courts to sentence within the normal guideline range rather than apply a statutory minimum where the safety valve criteria applied. Flores-Ochoa obtained the benefit of this guideline, receiving a sentence ten months lower than that required by the mandatory minimum for marihuana trafficking.

In May 1995, the Commission submitted U.S.S.G. § 2D1.1(b)(4)[1] to Congress. This was an additional measure, passed under the authority of the safety valve legislation but unnecessary to its basic objective of making the mandatory minimum sentence inapplicable in certain cases. It provided a two-level reduction for those with offense levels above 26 who met the criteria of § 5C1.2. The Commission chose not to list this guideline among

---

[1] This guideline is now U.S.S.G. § 2D1.1(b)(6) (1997). Because this case concerns the 1995 guidelines, however, we refer to the original section number.

4

those made retroactive by U.S.S.G. § 1B1.10.

Flores-Ochoa's creative argument does not convince us to apply § 2D1.1(b)(4) retroactively in the face of the Commission's plain desire to the contrary. The Commission immediately enacted an enabling guideline dealing with Congress's expressed area of concern. Later, after further reflection, the Commission decided that an additional provision might be warranted in certain cases, and adopted it.

Nothing in the Act even suggests that Congress would not have wanted the Commission to enact additional, non-retroactive guidelines under the Act, once it had enabled the basic provisions of the legislation itself. Applying the *Calverley* plain error standard, we cannot say that the sentencing court committed any error in refusing to make § 2D1.1(b)(4) retroactive, let alone that it was obvious.

### III.

Flores-Ochoa argues that his counsel was unconstitutionally ineffective for failing to move for a continuance in order that Flores-Ochoa might be sentenced after § 2D1.1(b)(4) took effect. Whether counsel was ineffective is a mixed question of law and fact reviewed *de novo*. *See Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995), *cert. denied*, 116 S. Ct. 1358 (1996). To prove ineffective assistance of counsel, however, Flores-Ochoa must meet the strict standard defined by *Strickland v. Washington*, 466 U.S. 668 (1984). He must show, first, that counsel's representation fell below an

5

objective standard of reasonableness, and second, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 688, 694.

Flores-Ochoa cannot satisfy the second prong of *Washington*. Even if we assume that his counsel acted improperly by failing to request a continuance, there is no evidence that the court would have granted the motion. While we have found ineffective assistance of counsel where an attorney failed to give the court an opportunity to exercise its discretion, the case upon which Flores-Ochoa relies, *United States v. Castro*, 26 F.3d 557 (5th Cir. 1994), involved wildly different facts.

In *Castro*, the attorney failed to move for a Judicial Recommendation Against Deportation ("JRAD"), a discretionary action by which a court may prevent the otherwise automatic deportation of an individual convicted of a "crime involving moral turpitude." 8 U.S.C. § 1251 (1970) (*transferred to* 8 U.S.C. § 1227 (1997)). The JRAD is a specific statutory option available to individuals convicted of these crimes; it can be used only in limited situations, and is intended to be considered in each such case.[2]

In contrast, a motion for continuance can be made in every class of cases, for innumerable reasons. At the very least, a holding in favor of Flores-Ochoa on this issue would require

---

[2] *See* 8 U.S.C. § 1251(b) (deportation provision "shall not apply . . . if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported. . . .").

attorneys to move for continuances in a substantial number of cases scheduled for sentencing between May and November, where a proposed guideline might affect the result.

More importantly, in this case we have considerably less evidence that the court would have granted the motion at issue than we had in *Castro*. There, the record contained evidence that Castro played a minimal role in the conspiracy for which he was convicted, and that the court had attempted to give the defendant a light sentence, explicitly stating that he was sentencing him as an adult rather than as a juvenile because it led to a more favorable sentencing result. 26 F.3d at 562. Furthermore, Castro had an American wife and child, factors that would have motivated many courts to allow him to remain in the United States. *Id.*

Here, we have no evidence that the court would have been inclined to grant a motion for a continuance. The mere fact that Flores-Ochoa likely would have benefited from the continuance is not sufficient, in itself, to demonstrate that it was "reasonably probable" that the court would have granted the motion, leading to the application of the reduction. Because Flores-Ochoa cannot meet the second prong of *Washington*, we reject his ineffective assistance of counsel claim.

The sentence and denial of § 2255 relief are AFFIRMED.