Jose RIOS–DELGADO, TN: Salomon
Roque–Escobar, Movant,

v.

UNITED STATES of America,
Respondent.

Nos. EP–98–CA–101–DB,
EP–97–CR–020–DB.

United States District Court,
W.D. Texas,
El Paso Division.

Oct. 11, 2000.

Mary Stillinger, El Paso, TX, for movant.

Janet M. Bonner, Assistant United States Attorney, El Paso, TX, for respondent.

### ORDER GRANTING MOVANT'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO TITLE 28 U.S.C. § 2255

BRIONES, District Judge.

BEFORE THIS COURT is Movant Jose Rios–Delgado's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Motion to Vacate"), the Government's Response to Motion to Vacate Sentence Under 28 U.S.C. § 2255 and Movant's Reply to the Government's Response.

#### Facts & Procedural History

On January 10, 1989, Movant pled guilty to the felony conviction of Commercial Burglary in the Superior Court of California and was sentenced to two (2) years imprisonment. After serving his sentence, Movant was deported.

Eight years later, on January 16, 1997, Movant, represented by Claudia Beavers of the Federal Public Defender's Office, pled guilty to a one count Information charging him with Illegal Re-entry of a Removed Alien, a violation of 8 U.S.C.

§ 1326. On February 3, 1997, the Government separately filed an Amended Notice of Penalty Enhancement, asserting that Movant had previously been convicted of Commercial Burglary, a conviction that it alleges subjects him to an enhanced sentence.

On March 10, 1997, Movant was sentenced after the Government agreed not to oppose the award of a three-level reduction for acceptance of responsibility and to recommend a two-level downward departure in exchange for his agreement to waive deportation proceedings and to enter a plea of guilty. A Pre–Sentence Investigation Report ("PSR") was prepared and advised the Court that Movant's sentence should be adjusted upwards by 16 levels because of United States Sentencing Guidelines ("Guidelines") § 2L1.2(b)(2), which requires such an the enhancement "[i]f the defendant previously was deported after his conviction for an aggravated felony" as provided in 8 U.S.C. § 1101(a)(43). The PSI further advised that, in light of a criminal history category VI, less the adjustment and the downward departure, the guideline range of imprisonment was 63–78 months. Movant filed no objection to the PSR nor voiced concerns over the proposed 16–level enhancement. This Court accepted the PSR and sentenced Movant to a sixty-six-month term of incarceration, finding that Movant was an aggravated felon under the statutory definition in 8 U.S.C. § 1101(a)(43)—referenced as Note 7 in the Comment to § 2L1.2(b)(2) of the Guidelines.

Movant did not contest his conviction or sentence by way of a direct appeal to the Court of Appeals for the Fifth Circuit, having waived that right through a plea agreement.

Four months after his sentence, on July 11, 1997, the Fifth Circuit decided *United States v. Reyna–Espinosa*, 117 F.3d 826 (5th Cir.1997). In *Reyna–Espinosa*, the Fifth Circuit held that the statutory definition of "aggravated felony" is not intended to be incorporated into § 2L1.2(b)(2) of the Guidelines, which contains a much more limited definition of "aggravated felon" than the statutory definition in 8 U.S.C. § 1101(a)(43). *See id.* at 830.

Eight months after *Reyna–Espinosa*, on March 31, 1998, Movant filed his Motion to Vacate. In his Motion to Vacate, Movant posits two overlapping grounds for relief: (1) that he was denied the right to effective assistance of counsel during plea negotiations because counsel advised him to plead without knowing whether his prior felony conviction was a qualifying aggravated felony under the § 2L1.2(b)(2) 16–level enhancement; and (2) that he was denied the right to effective assistance of counsel during sentencing when counsel failed to object to the imposition of the 16–level enhancement based on the classification of his prior felony conviction of Commercial Burglary as an aggravated felony.

On May 12, 1998, the Government filed a Response, through which it alleges that the Motion to Vacate is time-barred and, in the alternative, that *Reyna–Espinosa* is inapplicable as precedent in this collateral attack. Moreover, the Government argues that, pursuant to *Butler v. McKellar*, 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990), "[a] new decision generally is not applicable in cases on collateral review unless the decision was dictated by precedent existing at the time the petitioner's conviction became final." The Government further argues that Movant does not demonstrate how he was prejudiced by his attorney's alleged omissions because "any objection to the sentence properly would have been rejected by the sentencing court."

On June 1, 1998, this Court entered an Order Appointing Counsel and Granting Evidentiary Hearing. Therein, the Court appointed attorney Mary Stillinger to represent Movant and stated that an evidentiary hearing would be set in the future.

On October 23, 1998, the Court entered an Order Setting Briefing Schedule, requiring that Movant address the Govern-

ment's Response. In that same order, the Court noted that additional briefing may obviate the need for an evidentiary hearing.

On November 20, 1998, Movant filed a thorough Reply. Therein, Movant avers that his Motion to Vacate is timely despite having filed it one year and twenty days after his sentence became final for two reasons: (1) the one-year statute of limitations did not start to run under 28 U.S.C. § 2255(4) until Movant discovered the factual basis of his claims on July 11, 1997, when *Reyna–Espinosa* was decided, and (2) for those same reasons, the statute of limitations should be equitably tolled.

Movant further replies that he does demonstrate prejudice because "under the law and guideline in effect at sentencing," he should have only received a four-level enhancement, under § 2L1.2(b)(1) for having been previously deported for a felony conviction, not a 16–level enhancement under § 2L1.2(b)(2) for having been previously deported for an aggravated felony conviction, which would have resulted in a punishment range of 24–30 months instead of the 63–78 month range actually used at sentencing. He cites a case with virtually identical facts that was previously before this Court as an example of how he was prejudiced, given that the same Federal Public Defender's Office that represented him at sentencing represented one Cesar Pacillas–Santa Cruz ("Pacillas"), and at

that time knew to object to the 16–level enhancement.[1]

Lastly, Movant addresses the retroactive application of law that the Government contends *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and its progeny prohibit: "[Movant] would have been afforded the benefit of *Reyna–Espinosa before* his conviction became final [had counsel objected]." (Emphasis supplied). In the alternative, Movant also argues that *Teague* allows the application of the *Reyna–Espinosa* holding because it did not announce a new rule of law nor refer to procedural rules. In light of Movant's Reply, the Court finds that an evidentiary hearing is not necessary.

## Discussion

### I. *Timeliness*

■ Movant signed his Motion to Vacate on March 30, 1998, and filed it on March 31, 1998. Thus, the specific period of limitation provision governing motions to vacate, set aside or correct sentence applies.[2] More specifically, that provision states:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the

---

1. At Pacillas's sentencing hearing, his attorney, a member of the Office of the Federal Public Defender, objected to the proposed 16–level enhancement for an "aggravated felony" classification, urging that a probated sentence for a felony is only a 4–level enhancement. The Court overruled the objection, applying a 16–level enhancement and commenting, "maybe the Fifth Circuit will give him [(Pacillas)] some relief."

 Later, on September 9, 1997, the Fifth Circuit provided that relief to Pacillas. The Fifth Circuit held that this Court erred by increasing Pacillas's sentence by 16 levels because Pacillas's prior felony conviction was not an "aggravated felony" under the Guidelines. More specifically, the Fifth Circuit found that

this Court "relied on 8 U.S.C. § 1101(a)(43)—rather than § 2L1.2(b)(2), comment, (n. 7)—for the definition of 'aggravated felony.'" The Fifth Circuit vacated Pacillas's sentence and remanded to this Court for re-sentencing in the light of *Reyna–Espinosa*.

2. In *Spotville v. Cain*, the Fifth Circuit held that, "a *pro se* prisoner's habeas petition is filed, for purposes of determining the applicability of the Anti-terrorism and Effective Death Penalty Act of 1996 [one year statute of limitation provision], when he delivers the papers to prison authorities for mailing." 149 F.3d 374, 378 (5th Cir.1998) (*per curiam*).

Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2255 (West Supp.2000) (emphasis added).

According to Rule 4(b) of the Federal Rules of Appellate Procedure, Movant's conviction became final on March 20, 1997, ten days after the judgment of conviction was entered since he did not appeal. *See Griffith v. Kentucky,* 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."); *United States v. Hass,* 150 F.3d 443, 450 (5th Cir.1998). Given the date his conviction became final, under § 2255(1) it was incumbent upon Movant to file his Motion to Vacate no later than March 20, 1998, one (1) year after his conviction became final.

On July 11, 1997, Movant could have discovered, through the exercise of due diligence, the facts supporting his claims. Movant effectively makes the case that he could not have discovered the factual predicate of his claims presented sooner than July 11, 1997, despite the exercise of due diligence. He specifically alleges that his counsel was ineffective for not contesting the 16–level enhancement which was based on an incorrect interpretation of § 2L1.2(b)(2) of the Guidelines. The Court finds that this particular claim could not have been discovered until the Fifth Circuit interpreted § 2L1.2(b)(2). The

Fifth Circuit interpreted § 2L1.2(b)(2) in *Reyna–Espinosa,* which was decided on July 11, 1997, four months after Movant's conviction became final. One year from that date is July 11, 1998, and the Motion to Vacate, was filed on March 30, 1998. Consequently, the Court finds that the statutory exception § 2255(4) applies to the instant Motion to Vacate, making it timely. The Court further finds that there is no need to reach the issue of equitable tolling because of the timely filing.

## II. Ineffective Assistance of Counsel

In general, claims of ineffective assistance of counsel give rise to constitutional issues cognizable under the statute governing motions to set aside, vacate, or correct sentence. *See United States v. Walker,* 68 F.3d 931, 934 (5th Cir.1995). The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." The Supreme Court has construed this language to include the right to assistance of counsel at trial and on appeal. *See Douglas v. California,* 372 U.S. 353, 357, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). The Supreme Court further has stated that the constitutional right conferred is not simply to the assistance of counsel, but also to the effective assistance of counsel, both at trial and on appeal. *See Evitts v. Lucey,* 469 U.S. 387, 398, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Thus, whether Movant had effective assistance of counsel at each stage of his prosecution, as guaranteed by the Sixth Amendment, is properly before the Court through the instant Motion.

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of counsel was announced by the Supreme Court in *Strickland.* There, the Supreme Court stated: "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined

the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. 2052; *see also Nealy v. Cabana,* 764 F.2d 1173, 1177 (5th Cir. 1985). To facilitate the inquiry, the Supreme Court established the following two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. In so doing, a convicted defendant must carry the burden of proof and overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. *See id.* at 687–91, 104 S.Ct. 2052; *Belyeu v. Scott,* 67 F.3d 535, 538 (5th Cir.1995). The courts are extremely deferential in scrutinizing the performance of counsel and make every effort to eliminate the distorting effects of hindsight. *See Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *Burger v. Kemp,* 483 U.S. 776, 789, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987); *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Green v. Johnson,* 116 F.3d 1115, 1122 (5th Cir.1997). It is strongly presumed that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; *Duff–Smith v. Collins,* 973 F.2d 1175, 1182 (5th Cir.1992). An attorney's strategic choices, usually based on information supplied by the defendant and from a thorough investigation of relevant facts and law are virtually unchallengeable. *See Boyle v. Johnson,* 93 F.3d 180, 187–88 (5th Cir.1996).

Furthermore, in order to establish that he has sustained prejudice—the second *Strickland* prong—the convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *Cantu v. Collins,* 967 F.2d 1006, 1016 (5th Cir.1992). In addition, analysis of the second or "prejudice" prong of the *Strickland* test must include examination of whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. *See Lackey v. Johnson,* 116 F.3d 149, 152 (5th Cir.1997). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart,* 506 U.S. at 372, 113 S.Ct. 838. Finally, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. *Westley v. Johnson,* 83 F.3d 714, 723 (5th Cir.1996) (citing *Lockhart,* 506 U.S. at 372–73, 113 S.Ct. 838).

Thus, in order to prevail on a claim of ineffective assistance of counsel, a movant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Darden v. Wainwright,* 477 U.S. 168, 184, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Williams v. Collins,* 16 F.3d 626, 631 (5th Cir.1994); *United States v. Bounds,* 943 F.2d 541, 544 (5th Cir.1991). A failure to establish either deficient performance or prejudice under that test makes it unnecessary to examine the other prong. *See Strickland,* 466 U.S. at 700,

104 S.Ct. 2052; *Green v. Johnson,* 116 F.3d at 1122.

### A. Reasonableness of Counsel's Performance

 Here, Movant alleges that he was denied the right to effective assistance of counsel during plea negotiations because counsel advised him to plead guilty without knowing whether his prior felony conviction was an aggravated felony under the 16-level enhancement provision of § 2L1.2(b)2. Clairvoyance is not a required attribute of effective representation. *See Sharp v. Johnson,* 107 F.3d 282, 290 n. 28 (5th Cir.1997) (citing *Garland v. Maggio,* 717 F.2d 199, 207 (5th Cir.1983)). Moreover, the Fifth Circuit has emphatically "made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir.2000) (citing *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir.1983)). In other words, there must be specific pleading requirements because the Court cannot speculate about a violation of Movant's right to effective counsel. *See Kinnamon v. Scott,* 40 F.3d 731, 735 (5th Cir.1994) (denying argument of ineffective assistance of counsel that "adds up to a claim that there may be something there").

 First, there is absolutely no evidence to suggest that Movant's counsel did not voice concerns about the 16-level enhancement during plea negotiations or that she was unaware of the litigation involving § 2L1.2(b)(2). Second, even assuming arguendo that counsel had no knowledge of challenges to the use of § 2L1.2(b)(2)'s statutory definition of "aggravated felony" pending before the Fifth Circuit, the Court cannot demand that she use a pending case as leverage during plea negotiations. In other words, it is hard to imagine that the Government would have offered a better plea offer because of a pending case. Indeed, it is this Court's experience that the Government only concedes to a more lenient sentence, as compared to what it was prepared to offer, in the face of sound precedent. Therefore, counsel's performance was not constitutionally deficient when she advised Movant to accept the plea offer while there was a case pending before the Fifth Circuit that might impact her client's case.

 Rather, Movant was denied the right to effective assistance of counsel at sentencing when counsel failed simply to object to the 16-level enhancement that, at the time, was arguably inapplicable because the omission reflects a failure to reasonably investigate the case, to give the court an opportunity to exercise its discretion and it denied him a right to appeal the 16-level enhancement. Courts have noted how important it is for lawyers to have command of the facts and legal issues as they apply to a client's case.[3] "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *United States v. Williamson,* 183 F.3d 458, 462 (5th Cir.1999) (holding that counsel was deficient because he did not "keep abreast of legal developments related to [a] case" which would have revealed a solid and meritorious appellate issue) (citations omitted). "In oth-

---

**3.** Beyond legal requirements, lawyers practicing criminal law in federal courts have a more basic need to be prepared. For example, in 1988, the American Bar Association ("ABA") published an article underscoring how counsel's role would "change dramatically" under the new Guidelines "because old ploys to avoid imprisonment are no longer available, defense counsel must scrutinize the guidelines for new avenues of relief." Donald A. Purdy, Jr. & Michael Goldsmith, *Better Do Your Homework: Plea Bargaining Under the New Federal Sentencing Guidelines,* Spring 1988, A.B.A. Sec.Crim.Just., 2. The article emphasizes that counsel must devote great attention to researching and considering his client's prior convictions in detail and be prepared to challenge the sentencing implications for the prior convictions. *Id.* at 3. The authors sum up their article by warning defense attorneys that they should attain a "thorough knowledge of the changed system before traditional litigation skills may be effectively used." *Id.* at 36.

er words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052 (finding that counsel had investigated various avenues before sentencing where the record suggested he did not offer the evidence the petitioner desired because it was "of little help" and would have lead to the admissibility of the petitioner's criminal history). At minimum, an attorney should be familiar with the facts and law relevant to his client's case. *Childress v. Johnson,* 103 F.3d 1221, 1227 (5th Cir.1997) (ruling that counsel was ineffective at his client's plea hearing and acted like a "potted plant" for merely ascertaining if client wished to plead guilty, helping him execute a waiver of jury trial and stood in, on stand-by, just in case the sentencing court had questions).

 Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance. In cases where an accused complains that counsel was ineffective because he did not object to something or file a particular pretrial motion, the courts grant significant deference, as such actions fall "squarely within the ambit of trial strategy." *Murray v. Maggio* 736 F.2d 279, 283 (5th Cir.1984) (per curiam). Courts are not inclined to find ineffective assistance in such cases because they generally find such actions would have been frivolous anyhow and because the objections would have been overruled. *See Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir.1990); *Clark v. Collins,* 19 F.3d 959, 966 (5th Cir.1994); *United States v. Flores-Ochoa,* 139 F.3d 1022, 1024 (5th Cir.1998).

Here, the Court would have overruled the missing objection, as it did in Mr. Pacillas's case earlier. In *Flores-Ochoa,* the Fifth Circuit declined to find counsel ineffective for not filing a motion for continuance, even though there is no doubt the accused would have benefitted from a continuance, because it was not "reasonably probable" that the court would have granted the continuance. *See* 139 F.3d at 1024. Moreover, in *Murray,* the court found that any motion to suppress that would have been filed most likely would have been denied, making the ineffective assistance claim baseless. *See* 736 F.2d at 282. In the instant case, the record reflects that this Court favored a broad definition of "aggravated felony" and imposition of a 16–level enhancement over the narrow definition in § 2L1.2(b)(2) that called for only a 4–level enhancement. Here, unlike in *Flores-Ochoa* and *Murray,* the Court finds that there were several valid reasons for the Court to have considered the objection even if eventually the Court would have overruled such objections.

First, had counsel objected to the 16–level enhancement, the objection would not have been frivolous. In stark contrast to the arguments available to counsel in *Koch* and *Clark,* Movant's attorney had valid arguments. In *Koch,* the Court found that Koch did not offer legitimate reasons that counsel could have argued to suppress the statements he wanted suppressed by way of a motion. *See Koch,* 907 F.2d at 526–30. In *Clark v. Collins,* the Court found that counsel did "not fall short of the reasonable professional assistance guaranteed by the [S]ixth [A]mendment" because had counsel objected during voir dire on the basis of *Batson* it would have been frivolous given that *Batson,* could not be applied retroactively. 19 F.3d at 965. Here, counsel had several legitimate arguments she could have made to meet the Sixth Amendment objectives of ensuring that the sentencing was adversarial and fair. In fact, she did not have to take heroic steps. Her strategy at trial could have been very simple given the deference lawyers are provided under *Strickland.* For example, it would have been enough for her to have objected and argued that, while the language in § 2L1.2(b)(2) referred to the broad statutory definition of "aggravated

felony" by way of a *"see"* signal, § 2L1.2(b)(2) defined Movant's commercial burglary conviction as only a non-aggravated felony conviction in the main text. In other words, just by objecting and arguing the plain language of the applicable section in the Guidelines, counsel would have had plenty to say to make her an effective advocate. *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994) ("No system of law—whether it be judge-made or legislatively enacted—can be so perfectly drafted as to leave no room for dispute.").

Her failure to object on the most basic level suggests that she was ineffective for a second reason. That is, counsel did not conduct a basic investigation into the Guidelines, the PSR, relevant legal developments or her employer's experience with this Guidelines section. Had she done so, counsel could have easily argued for a narrow definition and application of "aggravated felony" under § 2L1.2(b)(2). Also, counsel could have informed the Court that *Reyna–Espinosa* was pending before the Fifth Circuit and that the circuit courts were split on the application of the term "aggravated felony," as defined in § 2L1.2(b)(2). Moreover, had counsel queried her colleagues in the Federal Public Defender's Office, she could have objected and, if overruled, she could have added that her office two months earlier raised concerns about the section's application in the Pacillas case and that this Court preserved a right to appeal in that case. All of this information, individually and collectively, would have provided counsel some shelter from wearing a badge of ineffectiveness. However, the record reflects that not one such argument was made. Given the numerous grounds for objection, the Court must conclude that objection regarding the application of § 2L1.2(b)(2) would not have been frivolous.

Furthermore, the objection would not have been frivolous because the ruling in *Reyna–Espinosa* can provide Movant relief even though it was decided after Movant's case became final. Unlike in *Clark*, where the Fifth Circuit ruled that counsel was not ineffective because the law that Petitioner claimed entitled to him to relief was an inapplicable new law rendered four years after counsel's alleged error, the *Reyna–Espinosa* decision can be applied retroactively as dictated by the *Teague* inquiry. *See Clark*, 19 F.3d at 966.

The *Teague* inquiry is conducted in three steps. *See O'Dell v. Netherland*, 521 U.S. 151, 155, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997). First, the date on which the defendant's conviction became final is determined. *See Lambrix v. Singletary*, 520 U.S. 518, 527, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997). Next, a habeas court must consider if a new rule exists that might be applicable to the movant's claim. *See O'Dell*, 521 U.S. at 155, 117 S.Ct. 1969. In *Teague*, the plurality stated that a decision constitutes a "new rule" "if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301, 109 S.Ct. 1060. After *Teague*, the Supreme Court sought to fine-tune the definition of the "new rule" in *Butler v. McKellar*, 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990). In *Butler*, the Supreme Court recognized that there are variations as to what constitutes a "new rule." Generally speaking, a new decision that expressly overrules an earlier holding is the most obvious example of a "new rule" because it " 'breaks new ground' or 'imposes a new obligation.' In the vast majority of cases, however, where the new decision is reached by an extension of the reasoning of previous cases, the inquiry will be more difficult." *Butler*, 494 U.S. at 412–13, 110 S.Ct. 1212. In the instant case, the Government argues that Movant cannot benefit from *Reyna–Espinosa* because his conviction was final when it was decided and there was no precedent existing at the time of his sentence which dictated the narrow reading of "aggravated felony" in

accordance with the ruling in *Reyna–Espinosa*. In other .words, the Government argues *Reyna–Espinosa* is a new rule and, consequently, its application to a conviction that is final is precluded on collateral review. Movant counters that *Reyna–Espinosa* does not announce a new rule of criminal procedure and merely interprets a statute in existence at the time of his sentence or before the conviction became final.

■■■■■ *Reyna–Espinosa* is not about a rule of criminal procedure; rather, that case interprets the Guidelines. "A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers,* 511 U.S. at 312–13, 114 S.Ct. 1510. When a court "construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law." *Id.* at 313 n. 12, 114 S.Ct. 1510. By contrast, rules of criminal procedure, which cannot apply on collateral review under *Teague* are those that concern "a procedure which creates an impermissibly large risk that the innocent will be convicted." *See Bousley v. United States,* 523 U.S. 614, 620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). In other words, Movant is not asking that this Court apply a new law that rings of constitutional importance as to his innocence. *See Teague,* 489 U.S. at 310, 109 S.Ct. 1060. Therefore, *Teague* does not preclude the application of *Reyna–Espinosa* to Movant's final conviction.

Lastly, unlike *Strickland,* where there was evidence that the attorney acted as he did for particular strategic reasons, the Court here cannot find a single reason to justify counsel's silence at Movant's sentencing hearing. On two separate occasions, January 16, 1997, and February 3, 1997, counsel was provided notice of the potential for an enhanced penalty due to Movant's prior felony conviction of Commercial Burglary. Also, at the sentencing hearing, a PSR was offered which pro-

posed that the 16–level enhancement be imposed based on § 2L1.2(b)(2)'s broad definition of "aggravated felony." There is nothing in the record to suggest that counsel was taken by surprise at the sentencing when the PSR recommended enhanced punishment or that the silence was sound trial strategy. In fact, the record suggests that counsel's silence reflects nothing more than a failure to investigate the relevant facts and law that would have given her a strategy at Movant's sentencing hearing. The Court's finding is supported by the letter Movant received from the Federal Public Defender's Office stating that his attorney made a mistake and so the office was forwarding him a draft of a Motion to Vacate so that he could seek a correction of his sentence. In sum, counsel did not have a trial strategy when she stood in silence at Movant's sentencing hearing.

Consequently, counsel was deficient because she had several non-frivolous arguments to make upon a proper objection but failed to bring these arguments to the attention of the sentencing and appellate courts because she did not investigate or familiarize herself with the case before Movant's sentencing.

## B. Prejudice

■■■ To prove prejudice from this deficient performance, Movant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional error[ ], the result of the proceeding would have been different." *Jones v. Jones,* 163 F.3d 285, 300 (5th Cir.1998) (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). A reasonable probability is that which renders the proceeding unfair or unreliable— i.e., undermines confidence it its outcome. *Green v. Johnson,* 160 F.3d 1029, 1043 (5th Cir.1998) (citing *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)). This Court must examine then, whether the holding in *Reyna–Espinosa* rendered the sentence unfair or unreliable. This requires that the court "determine the probable outcome on appeal had

counsel raised the argument." *Williamson,* 183 F.3d at 463. Given the virtually identical facts in Pacillas, except for the actions of counsel, the probable outcome is that the Fifth Circuit would have vacated Movant's sentence and ordered this Court to re-sentence Movant in light of *Reyna–Espinosa* if counsel would have objected and if overruled, requested an appealed as to the 16–level enhancement issue. This case is also fairly similar to *Williamson,* where the court sentenced the defendant as a career offender when the Guidelines "exceeded their stated authority" and he should have been sentenced without the enhancement. *See id.* The Court finds that Movant was prejudiced because counsel did not preserve Movant's right to a direct appeal by making the non-frivolous objection to the 16–level enhancement that added, at minimum, thirty-six months to his sentence. Hence, the Court is of the opinion that the instant Motion to Vacate satisfies the *Strickland* two-prong test and should be granted.

Accordingly, **IT IS HEREBY ORDERED** that Movant Jose Rios–Delgado's Motion to Vacate, Set Aside or Correct Sentence filed pursuant to 28 U.S.C. § 2255 is **GRANTED.**

**IT IS FURTHER ORDERED** that Movant's request to **VACATE SENTENCE** is **GRANTED** to the extent that the Court will re-sentence him in accordance with *Reyna–Espinosa,* 117 F.3d 826 (5th Cir.1997).

**IT IS FURTHER ORDERED** that **on or before October 15, 2000,** Movant's Attorney, Mary Stillinger, file a motion to set re-sentencing in criminal cause number EP–97–CR–020–DB.

**IT IS FINALLY ORDERED** that Movant's request to vacate conviction is **DENIED.**