**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 02-50046**

**MICHAEL DEWAYNE JOHNSON,**

**Petitioner-Appellant,**

**VERSUS**

**JANIE COCKRELL, Director, Texas Department**
**of Criminal Justice, Institutional Division,**

**Respondent-Appellee.**

**Appeal from the United States District Court**
**For the Western District of Texas**

**September 17, 2002**

Before DeMOSS, PARKER, and DENNIS, Circuit Judges.

DeMOSS, Circuit Judge:

On May, 8, 1996, Michael Dewayne Johnson was convicted of, and received the death penalty for, the 1995 murder of Jeff Wetterman. The Texas Court of Criminal Appeals affirmed the conviction and sentence in an unpublished opinion, and the United States Supreme Court denied certiorari on May 18, 1998. Johnson filed a state application for habeas relief in the trial court, which was denied

on February 18, 2000, after a hearing was held.  The Texas Court of Criminal Appeals also denied the application based on the trial court's findings.  In September 2000, Johnson filed his federal habeas petition in the Western District of Texas.  After the district court denied relief, Johnson filed a timely notice of appeal, but the court denied his request for a certificate of appealability (COA).  Johnson now appeals, requesting this Court issue a COA.  For the following reasons, Johnson's request is denied.

I.    BACKGROUND

Around 7:00 a.m. on September 10, 1995, Johnson and David Vest were driving a stolen Cadillac southbound on I-35 near Waco after leaving Dallas on their way to the Texas coast.  Johnson possessed a stolen 9 mm gun.  Their car was low on gas, so they decided to "make a gas run."[1]  Johnson drove the car into Lorena Fastime, a convenience store/gas station, and Vest jumped out and started pumping gas.  The store clerk, Jeff Wetterman, came outside and began talking to Vest.  Johnson got out of the car and moved to the rear of the vehicle, where Vest was pumping gas.  Vest asked Johnson if he had the gun on him, and Johnson lifted his shirt to

---

[1] A "gas run" is a quick theft of gas from a service station. The car is driven up to a gas pump and left running, while the passenger (who leaves his door open) pumps gas into the tank.  When the passenger hangs up the pump handle, the passenger jumps into the car as the driver speeds away without paying for the gasoline.

show Vest the gun.  Vest claimed at trial he muttered "shit" under his breath, and, as he returned the nozzle to the pump, he heard a shot and saw the victim fall.  Johnson later claimed at trial that he thought Vest said "shoot."  The two sped away, headed for Corpus Christi.  The single bullet passed through Wetterman's jaw and neck, killing him.

## II.  ISSUES PRESENTED

Johnson does not challenge his conviction for this crime.  Rather, he seeks COA on several issues related to the imposition of the death penalty.  Specifically, he asserts:

1) Trial counsel was ineffective during the punishment phase when they failed to investigate and produce available mitigating evidence of Johnson's organic brain impairment, physical and sexual abuse as a child, alcoholism, drug use, and an exceptionally unhappy and unstable childhood.

2) Trial counsel was ineffective when they failed to object to Dr. Grigson's expert testimony on the future dangerousness issue.

3) Article 37.071 of the Texas Code of Criminal Procedure is unconstitutional because it does not provide an independent review of the propriety of the death sentence, and thus creates the possibility the death sentence in Texas will be imposed arbitrarily and capriciously in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

4) Capital sentencing provisions are unconstitutional because they fail to inform juries of minimum prison time.

5) The trial court failed to properly instruct the jury about Texas parole law and the meaning of a

3

life sentence in violation of the Eighth and Fourteenth Amendments.

## III. **ANALYSIS**

Johnson may not appeal the district court's denial of his petition for habeas corpus absent this Court's issuance of a COA. To obtain a COA, Johnson must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). This standard is met if he demonstrates that "reasonable jurists could debate whether (or, for that matter agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000). "[T]he determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." *Id.* at 772.

**ISSUE I:** **Whether Johnson's trial counsel failed to adequately investigate and introduce available mitigating evidence, and, if so, whether this failure amounted to ineffective assistance of counsel.**

Johnson argues that his trial counsel had available substantial evidence of his history of head injuries, physical and sexual abuse, behavioral instability, and drug and alcohol abuse. He asserts that this evidence "supports the scientific conclusion" that he "suffers from an organic brain impairment which not only mitigates his moral culpability for the offense, but also supports

4

a claim that because of a physical/mental defect, he was unable to conform his actions to the requirement of the law." In addition, he argues that there was evidence available to show that his brain injuries are treatable and that treatment, combined with a highly structured environment, could significantly reduce or eliminate his propensity toward violence.

Johnson likens his counsels' failure to conduct adequate research about mitigating evidence to the deficient performance by counsel in *Lockett v. Anderson*, 230 F.3d 695 (5th Cir. 2001). In *Lockett*, there was evidence that the defendant suffered from a personality disorder and brain abnormality. Also, the defendant suffered from seizures caused by temporal lobe epilepsy, a condition that would explain "senseless acts of violence and . . . [an] eccentric interpretation of reality." *Lockett*, 230 F.3d at 713. After noting that "[a]lthough he possessed information that plainly suggested the need to investigate Lockett's psychological problems, he did not, to any degree, pursue this information," this Court held Lockett's counsel to be deficient. *Id.* at 714. Johnson asserts here that his counsel had a photo taken shortly after his birth that shows a head injury resulting from forcep's use. However, his trial counsel did not take this cue to investigate. Consequently, the photo was not introduced to the jury, and his mental state was not really investigated until his state habeas counsel took the initiative to do so.

5

Finally, Johnson urges that his attorneys incorrectly resolved a perceived conflict in interest. Specifically, he claims his attorneys were faced with a quandary: Any mitigation evidence about his abusive childhood would have impugned his mother, father, and other relatives. However, these same people were necessary witnesses to his alibi. Nonetheless, Johnson argues that his attorneys had a duty to present mitigating evidence at the sentencing phase because it was already apparent that the alibi had failed. And he asserts that his counsel's failure to do so amounts to deficient performance. *See* **Williams v. Taylor**, 529 U.S. 362, 395-96 (2000); *see also* **Caro v. Woodford**, 280 F.3d 1247, 1255-58 (9th Cir.), *cert. denied*, 122 S.Ct. 2645 (2002).

We deny Johnson's request for a COA on this issue because he has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). During the punishment phase of his trial, the Government introduced evidence of Johnson's violent propensities and future dangerousness. To rebut this evidence, Johnson's attorneys introduced mitigating evidence of his good character, mainly through testimony by his family members. Johnson's contention here is that his counsels' failure to also introduce mitigating evidence about an alleged injury, alcohol and drug abuse, and abusive childhood was deficient representation. To prevail on this claim, he must establish that his attorneys failed to investigate or introduce this evidence;

6

that this failure amounted to deficient performance by his attorneys; and that he was prejudiced by this failure. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Johnson fails to establish any of these three things. First, it does not appear that his attorneys shirked their duty to investigate possible mitigating evidence—an important fact which distinguishes this case from *Lockett*, the case upon which Johnson relies. In *Lockett*, this Court noted:

> [T]he state habeas record reflects an overworked defense counsel, trying to present a defense in two death penalty trials . . . Defense counsel's December 1998 affidavit states: "Because of my mother's illness and hospitalization and my unexpected appointment to represent two other capital murder defendants while trying to prepare for Carl's two trials, I was simply unable to devote time to investigating the facts and witnesses involved in Carl's case as much as I would have liked to." This admission is borne out in the affidavits of those who testified on Lockett's behalf. Lockett's mother states: "Mr. Townsend never approached me to testify at Carl's trials but I asked him if I could testify. Mr. Townsend asked me what I wanted to say and I told him that I just wanted to say something on Carl's behalf and ask the jury for mercy. Mr. Townsend said that I could do that, but he never really discussed my testimony with me or suggested anything else for me to testify about. He never explained to me [the] kind of evidence that would be useful at the sentencing phase of Carl's trial or asked me questions about what kind of person Carl was." Other witnesses' and potential witnesses' statements are similar.

230 F.3d at 711-12. In contrast, the Government notes here that Johnson's attorneys spent hours interviewing his family members at length and maintained weekly contact with them. During these interviews, they asked about a "laundry list" of topics, beginning

7

with Johnson's childhood. They specifically inquired about possible substance abuse, physical and sexual abuse, and brain injury issues. Apparently, despite all their questions, neither Johnson nor his family ever disclosed any history of abuse or brain injury.

Because Johnson's attorneys appear to have adequately investigated possible mitigation evidence, their performance was not deficient under *Lockett*. This Court has consistently refused to hold attorneys responsible for introducing mitigation evidence that their client and other witnesses fail to disclose. *E.g.,* *Soria v. Johnson*, 207 F.3d 232, 250-51 (5th Cir. 2000); *West v. Johnson*, 92 F.3d 1385, 1408-09 (5th Cir. 1996).

Second—even assuming the truth of Johnson's newly claimed mitigating evidence and that it was available to his attorneys—we have made clear that, so long as the decision not to introduce double-edged mitigating evidence was based on trial strategy rather than lack of investigation, "those questions are even less susceptible to judicial second-guessing." *Kitchens v. Johnson*, 190 F.3d 698, 703 (5th Cir. 1999).

Finally, it does not appear that Johnson could establish that he was prejudiced by his attorneys' alleged deficient performance. *See* *Strickland*, 466 U.S. at 693. The Government introduced evidence from several witnesses as to his future dangerousness: (1) he beat his ex-girlfriend and she had witnessed him fleeing police

in a stolen car; (2) he pointed a gun at a neighbor; (3) he pulled a knife on another person and chased him around, eventually cutting him; (4) he tried to run over a cat, and, when he failed, he backed up and tried again; (5) he would steal cars and drive them into mailboxes to wreck them; (6) he got in an argument with a woman, jumped on the hood of her car, and smashed in the window; and (7) he was spiteful, uncooperative, and destructive while in pre-trial confinement. Dr. Grigson, the state's expert psychologist, also testified that Johnson posed a continuing threat to society.

In response, Johnson's attorneys introduced character evidence on his behalf. They also vigorously attacked the validity of the state's expert who opined that Johnson presented a future danger to society. They even introduced their own expert testimony to rebut the state's expert. Notably, this was the strongest mitigation evidence they could offer because any evidence about Johnson's alleged brain injury, abusive childhood, and drug and alcohol problems is all "double edged." In other words, even if his recent claims about this evidence is true, it could all be read by the jury to support, rather than detract, from his future dangerousness. Thus, "[i]n light of the evidence presented at trial, [Johnson] has failed to show evidence of sufficient quality and force to raise a reasonable probability that, had it been presented to the jury, a life sentence would have resulted." *Andrews v. Collins*, 21 F.3d 612, 624 (5th Cir. 1994); *see also*

*Santellan v. Cockrell*, 271 F.3d 190, 198 (5th Cir. 2001) ("Considering [petitioner's] history in light of the horrific nature of this offense, a reasonable court could conclude that there was no substantial likelihood that the outcome of the punishment phase would have been altered by evidence that he suffered organic brain damage."), *cert. denied*, 122 S.Ct. 1463 (2000).

Because it is unlikely that Johnson can satisfy his burden under **Strickland** to prove deficient performance and prejudice, we deny his application for a COA on this issue.

**ISSUE II: Whether trial counsels' failure to object to Dr. Grigson's expert testimony regarding future dangerousness amounted to ineffective assistance of counsel.**

Under Texas law, the jury is required to decide, in a capital case, "whether there is a probability that the Defendant would commit criminal acts of violence that would constitute a continuing threat to society." TEX. CODE OF CRIM. PROC. art. 37.071 §2(b)(1). In addition to the Government's evidence about Johnson's prior violent behavior, it also presented Dr. Grigson's expert testimony that, based on a hypothetical assuming the truth of Johnson's prior acts, Johnson presented a future threat. Johnson's attorneys did not object to this testimony, although they did rigorously cross-examine him about his methodology and credentials. In addition, they presented their own rebuttal expert who opined that Johnson

10

was not a future danger to society.

Johnson argues that his counsels' failure to object to Dr. Grigson's testimony amounted to ineffective assistance of counsel. Specifically, he contends that Grigson's opinion was inadmissable and that it effected the jury's decision to impose the death penalty.

Johnson relies almost exclusively on *Rios-Delgado v. United States*, 117 F. Supp. 2d 581, 588-89 (W.D. Tex. 2000), where the district court held that an attorney's failure to object to a sentencing enhancement that was the subject of a circuit split amounted to ineffective assistance of counsel. In *Rios-Delgado*, the district court concluded that the attorney's "silence reflect[ed] nothing more than a failure to investigate the relevant facts and law that would have given her a strategy." 117 F. Supp. 2d at 591.

In arguing the inadmissability of Grigson's testimony, Johnson relies upon Judge Garza's concurrence in *Flores v. Johnson*, where he questioned the admissibility of expert future dangerousness testimony. 210 F.3d 456, 458 (5th Cir. 2000). He also points to *Daubert*, *Robinson*, and *Kelly* for the proposition that expert testimony must be reliable, relevant, and helpful to the jury to be admissible.[2] He argues that Grigson's methodology cannot be

---

[2] *See* *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (1995); *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992).

11

tested, and that his testimony is not ultimately helpful to the jury.[3]  Thus, he contends that any objection to this testimony would have been sustained by the trial court.

For these reasons, Johnson asserts that his counsels' failure to object to this testimony amounts to deficient performance under *Strickland*'s first prong.  He characterizes the decision not to object as "an unexplainable and erroneous decision."

He also argues that, under *Strickland*'s second prong, he has demonstrated prejudice.  Specifically, he posits that his criminal history is unremarkable, and would not have incited in the jury a natural or reasonable fear that he was a future danger without an "expert" to interpret this criminal history.

We deny Johnson's application for a COA on this issue.  The facts here are distinguishable from *Rios-Delgado*, the district court case upon which he relies.  In *Rios-Delgado* the defendant's attorney failed to object to a sentencing enhancement that treated his prior conviction for commercial burglary as an "aggregated felony."  The district court concluded that this failure to object was deficient for three reasons.  First, such an objection would not have been frivolous.  117 F. Supp. 2d at 589.  The plain

---

[3]   Johnson acknowledges that the Supreme Court, in a case involving this same expert, concluded that expert testimony about future dangerousness was admissible in *Barefoot v. Estelle*, 463 U.S. 880, 897-99 (1983);  however, he contends that, under *Daubert* and *Robinson*, the Supreme Court would reach a different result if faced with the same facts now.

12

language of the sentencing guidelines could support an argument for a narrow reading of the sentencing guideline provision. *Id*. at 590. Second, this failure to object reflected a failure to conduct even the most basic legal investigation. *Id*. Had the attorney investigated, she would have discovered and brought to the court's attention a circuit split on this very issue. *Id*. She could also have pointed to a pending Fifth Circuit case on this very issue. Finally, the court noted that there was *no* evidence that counsel's failure to object stemmed from strategic reasons rather than pure neglect. *Id*. at 591.

In contrast with *Rios-Delgado*, precedent from the Supreme Court, Fifth Circuit, and Texas Court of Criminal Appeals unanimously support the conclusion that an objection to Dr. Grigson's testimony would have been frivolous. Johnson's argument about the inadmissability of Grigson's testimony is foreclosed by *Barefoot v. Estelle*, where the Supreme Court rejected the view that this type of evidence is inadmissable. We also disagree that Johnson could have persuasively argued to the district court that *Daubert* or *Robinson* altered the admissibility of this type of evidence after *Barefoot*. Johnson cites no authority questioning the continued validity of *Barefoot*. And, more importantly, this Court has rejected the very argument that Johnson is making here. *See Tigner v. Cockrell*, 264 F.3d 521, 526-27 (5th Cir. 2001) ("We decline Tigner's invitation to undercut *Barefoot*, because to do so

13

on collateral review would constitute a new rule in violation of *Teague*'s non-retroactivity principle"); *see also **Little v. Johnson***, 162 F.3d 855, 862-63 (5th Cir. 1998).

In addition, the Texas courts have repeatedly found psychiatric predictions of future dangerousness to be admissible. ***Fuller v. State***, 829 S.W.2d 191, 195 n.1 (Tex. Crim. App. 1992) ("Indeed, we have even held, without dissent, that objection to Dr. Grigson's expert testimony on this issue 'would amount to a futile act.'"), *overruled on other grounds by **Castillo v. State***, 913 S.W.2d 529 (1995); ***Nenno v. State***, 970 S.W.2d 549, 560-62 (Tex. Crim. App. 1998) (holding 'future dangerousness' expert testimony to be admissible), *overruled on other grounds by **State v. Terrazas***, 4 S.W.3d 720 (Tex. Crim. App. 1999).

Because any objection to the admissability of Grigson's testimony would have been overruled based on existing precedent, such an objection would have been futile. *See **Koch v. Puckett***, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections.").

Finally, the fact that there is evidence that Johnson's attorneys' decision not to object was made for strategic reasons further distinguishes this case from ***Rios-Delgado***. In fact, his attorneys claim that they consciously decided not to mount a futile objection to prevent putting the witness and Government on notice as to the challenges they intended to make to Dr. Grigson's

14

qualifications.

In sum, given the factual differences between this case and *Rois-Delgado*, coupled with our prior admonishment that "[g]enerally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance," *see Rios-Delgado*, 117 F. Supp. 2d at 589 (citing *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984)), Johnson has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, we deny his application for a COA on this issue.

**ISSUE III:**     **Whether Article 37.071 of the Texas Code of Criminal Procedure is unconstitutional because it does not provide for an independent review of the propriety of a death sentence.**

Article 37.071(e)(1) of the Texas Code of Criminal Procedure requires the court in a capital murder case to instruct the jury to answer the following issue:

> Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

While a defendant's potential "future dangerousness" is subject to review on appeal, the Texas Court of Criminal Appeals has refused to review the sufficiency of the evidence weighed by the jury in deciding whether mitigating evidence exists to support a life

15

sentence rather than death under article 37.071(e).  *See **McFarland***

***v. State***, 928 S.W.2d 482, 498 (Tex. Crim. App. 1996).

Johnson argues that article 37.071(e) grants juries the unfettered discretion to impose the death penalty.  Accordingly, he urges that it is unconstitutional.

The Government notes that Johnson asserted this claim on direct appeal where it was rejected by the Texas Court of Criminal Appeals.  It urges us to deny COA because the Texas Court of Criminal Appeals' determination that article 37.071 is constitutional is not contrary to clearly established federal precedent.

Johnson's request for a COA on this issue is denied.  This Court has previously rejected a claim identical to the one Johnson urges here.  *See **Hughes v. Johnson***, 191 F.3d 607, 621-23 (5th Cir. 1999).  And the Supreme Court has held that the Eighth Amendment does not require an appellate court to independently re-weigh aggravating and mitigating evidence.  ***Pulley v. Harris***, 465 U.S. 37, 45-46 (1984).  In fact, the Court has held that "[o]nce the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty, . . . the jury then is free to consider a myriad of factors to determine whether death is the appropriate punishment."  ***Tuilaepa v. California***, 512 U.S. 967, 979 (1994).  And "the sentencer may be given unbridled discretion in determining whether the death penalty

16

should be imposed after it has found that the defendant is a member of the class made eligible for the penalty." *Id.*

We deny Johnson's request for COA on this issue because he cites no authority directly supporting his position. Moreover, even if this Court decided this claim had merit, we would not be at liberty to create a new rule and apply it retroactively here. *See generally Teague v. Lane*, 489 U.S. 288 (1989).

**ISSUES IV & V: Whether Texas capital sentencing provisions are unconstitutional because they fail to inform juries of minimum prison time, and, if so, whether the trial court failed to properly instruct the jury about Texas parole law and the meaning of a life sentence in violation of U.S. Constitutional amendments XIII and XIV.**

When Johnson was tried, Texas law provided that a defendant who received a life sentence for a capital offense was first eligible for parole after serving forty years. Consistent with Texas law at the time, the district court specifically instructed the jury that it was not allowed to consider the prospect of parole. Johnson argues that the court's failure to instruct the jury in his case that he would not be eligible for parole until he had served forty years violated the Eighth and Fourteenth Amendments.

In *Simmons v. South Carolina*, the Supreme Court held that a jury must be informed about the defendant's non-eligibility for parole when: (1) the Government argues the defendant's future

17

dangerousness, and (2) where the "life sentence" option for a capital offense carries no possibility of parole. 512 U.S. 154, 156 (1994). However, the **Simmons**' Court specifically acknowledged that its holding did not apply to Texas, where life without any possibility of parole is not a sentencing option. *See* *id*. at 168 n.8.; *see also* **Ramdass v. Angelone**, 530 U.S. 156, 166 (2000) ("The parole-ineligibility instruction is required only when, assuming the jury fixes the sentence at life, the defendant is ineligible for parole under state law.").

Moreover, consistent with **Simmons** and its progeny, our Circuit has also consistently emphasized that *Simmons* only applies when there is a life-without-possibility-of-parole alternative to capital punishment, an alternative not available in Texas. **Collier v. Cockrell**, No. 01-10803 (July 25, 2002); *e.g., **Tigner***, 264 F.3d at 525.

Nonetheless, Johnson asserts that this limited reading of *Simmons*' reach is incorrect because the Supreme Court expanded *Simmons*' scope in **Kelly v. South Carolina**, 534 U.S. 246 (2002). *Kelly* involved South Carolina's sentencing scheme in capital cases. Under South Carolina law, capital jurors first decide whether the State has proven statutory aggravating circumstances beyond a reasonable doubt. If they do not agree on these aggravating factors unanimously, then the jury does *not* make a sentencing recommendation. Rather, the judge is charged with sentencing the

18

defendant either to life imprisonment without parole, or to a prison term of at least thirty years. S.C. Code Anno. §§ 16-3-20(B), (C). But, if the jury does find a statutory aggravating circumstance, it recommends one of *only two* possible sentences: life without the possibility or parole, or death. *Id*. The Supreme Court in *Kelly* held that, under this scheme, *Simmons* applied and the defendant was entitled to have the jurors instructed that he would be ineligible for parole. *Kelly*, 534 U.S. at 730. Nowhere do we read *Kelly* to extend *Simmons*' reach. To the contrary, *Kelly* simply reiterates that when the jury is faced with *only* two choices—death or life without the possibility of parole—the defendant is entitled to an instruction about his or her parole ineligibility. Accordingly, any extension of *Simmons* here in Johnson's case would constitute a new rule which is barred by the non-retroactive principles of *Teague v. Lane*. For these reasons, we decline to issue a COA on this issue.

**IV. CONCLUSION**

Johnson has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). We therefore DENY his request for a COA.

19