Arthur Lee **BURTON**, Petitioner,

v.

Rick **THALER**, Director, Texas Department of Criminal Justice, Correctional Institutions Division, Respondent.

Civil Action No. 10–1314.

United States District Court,
S.D. Texas,
Houston Division.

May 29, 2012.

James Richard Reed, Attorney at Law, Conroe, TX, for Petitioner.

Edward Larry Marshall, Tomee Morgan Heining, Officer of the Attorney General of Texas, Austin, TX, for Respondent.

## *MEMORANDUM AND ORDER*

DAVID HITTNER, District Judge.

Arthur Lee Burton, an inmate on Texas' death row, has filed a petition seeking federal habeas corpus relief. (Docket Entry No. 1). Respondent Rick Thaler, Director of the Texas Department of Criminal Justice—Correctional Institutions Division, has filed an answer. (Docket Entry No. 5). After considering the record, the pleadings, and the applicable law, the Court will deny Burton's habeas petition. The Court will not certify any issue for appellate review.

### BACKGROUND

#### I. The Crime

On July 29, 1997, Nancy Adleman left her home shortly after 7:00 p.m. for a short run on her usual route which took her along a bayou near her home. She never returned. The next day, police officers found Mrs. Aldeman's brutally beaten body in a heavily wooded area near the bayou. She had been strangled with her own shoelace. Because she was naked from the waist down, the police suspected that she had been sexually assaulted.

Witnesses reported having seen a dirty and angry-looking man riding a bicycle along the bayou around the time when Ms. Aldeman had left to go jogging. Using the witnesses' description, the police released a composite sketch to the public, from which individuals recognized Burton. The police took Burton to the homicide office for questioning. Burton initially denied committing the murder. When the police confronted him with inconsistencies in his story, he confessed.

Burton described how he killed Ms. Aldeman after a failed sexual assault:

> About a week and a half ago I was riding my step mom's bike on the bayou behind my house. I rode around for a while and I seen this woman jogging. She was an older white woman wearing some shorts and some tennis shoes and a top. I think they were blue. I rode up behind her and pushed my bike down the hill into the bayou. I ran up behind her and grabbed her and pulled her in the woods. I threw her down and she started screaming and I choked her with my hands. She went unconscious for a little while. I took her shorts off and her panties and I left them there. She came back to and I got on top of her and I was trying to have sex with her but I got so nervous that I couldn't do it. Then she started screaming again. She was asking me did I know about God. She said I forgive you. She told me to just leave. She asked me why was I doing it and that I didn't have to do it and saying that I was a handsome man. I got up and I was fixing to leave. She grabbed my ear and she started screaming and I choked her until she went unconscious again. Then I drug her and we both fell in a hole. I got out and I was leaving and I saw somebody a man walking by himself. I went back and I took a shoestring out of her shoe. I left her shoe on and tied her shoestring around her neck. Then I went and got my bike and I went on. . . . I rode back down the bayou to the street[.] . . . It was starting to get dark then. I didn't tell anybody.

Tr. Vol. 29, State's Exhibit 2.[1]

#### II. Burton's Initial Trial and Appeal

The State of Texas charged Burton with capital murder. Clerk's Record at 3. The

---

1. Burton's state litigation has resulted in a complex state court record containing many different volumes. For the purposes of this Memorandum and Order, the Court will use the following citations: "Clerk's Record" re-

State accused Burton of strangling the victim during the commission of, or attempted commission of, a kidnapping or aggravated sexual assault. The State based its case on the eyewitnesses placing Burton near the scene of the crime and on his confession. The trial defense attempted to call into doubt the identification of Burton as the man witnesses saw on the bayou before the murder. In addition, Burton himself testified that he only confessed after police mistreatment. The jury found Burton guilty of capital murder. After a separate punishment phase, the jury answered Texas' special issue questions in a manner requiring the imposition of a death sentence.

Burton appealed his conviction and sentence. During the pendency of Burton's appeal, he filed an initial state application for a writ of habeas corpus. The courts, however, took no immediate action on that application because the Texas Court of Criminal Appeals vacated Burton's death sentence on direct appeal. *Burton v. Texas*, No. 73,204 (Tex.Crim.App. March 7, 2001).

### III. Burton's Second Punishment Hearing

The State of Texas held a second punishment hearing in 2002. The Court of Criminal Appeals summarized the evidence adduced by the State as follows:

> In addition to the facts of the crime, the state presented evidence that, in 1988, when [Burton] was eighteen, he had participated in thirty-nine burglaries of vehicles and outbuildings in a single month. [Burton] and his co-defendants had stolen guns, radios, fishing equip-

ment, calculators, and other items. At times, the perpetrators would not take anything; they would just go through any papers in the car and then destroy the inside of the vehicle. Finally, [Burton's] brother testified that he knew that [Burton] used marijuana and sold cocaine when [he] lived in Arkansas.

*Burton v. Texas*, No. 73,204, at 2–3, 2004 WL 3093226 (Tex.Crim.App. May 19, 2004). The State also emphasized that during a prison classification interview Burton stated that he killed the victim because it was "[j]ust something [he] couldn't help."

The defense presented evidence that Burton was remorseful for his crime. Witnesses also described Burton's difficult, poverty-ridden childhood. The defense emphasized that Burton had not acted violently since his incarceration. A jury again answered Texas' special issues unfavorably to Burton. Burton was sentenced to death a second time on September 6, 2002. The Court of Criminal Appeals affirmed the direct appeal from Burton's second punishment hearing.

### IV. State Habeas Review

The reversal of Burton's initial death sentence did not void his initial state habeas application insofar as it related to his capital conviction. During the pendency of his second direct appeal, Burton filed a second application for a writ of habeas corpus. On separate dates (March 10, 2006 and April 2, 2007), the lower habeas court signed the State's proposed findings and conclusions recommending that the

---

fers to the transcript containing pretrial motions, trial court orders, jury instructions, and other pleadings from Burton's first trial; "Clerk's Record 2" refers to the transcript from the retrial of his punishment; "Tr. Vol." refers to the Statement of Facts, including

hearings on pretrial motions, jury voir dire, and the guilt/innocence phase; "Tr. 2 Vol." refers to the Statement of Facts from his retrial; "State Habeas Record" and "Second State Habeas Record" refer to his state habeas proceedings.

Court of Criminal Appeals deny Burton's two state habeas applications.

On November 7, 2007, the Court of Criminal Appeals entered two orders relating to Burton's state habeas applications. First, the Court of Criminal Appeals adopted all the findings and conclusions relating to Burton's initial application and denied relief on that action. *Ex parte Burton*, No. WR 64,360–02, 2007 WL 3292685 (Tex.Crim.App. Nov. 7, 2007).[2] Second, the Court of Criminal Appeals entered an order adopting the trial court's findings and denied relief with regard to all but one claim in Burton's second habeas application. *Ex parte Burton*, No. WR 64,360–01, 2007 WL 3289679 (Tex.Crim. App. Nov. 7, 2007). The Court of Criminal Appeals ordered additional briefing and oral argument on Burton's second ground for relief. After clarifying its concerns, the Court of Criminal Appeals remanded the case for factual development. *Ex parte Burton*, AP–75,790, 2008 WL 2486459 (Tex.Crim.App. Jun. 20, 2008). After additional briefing by the parties, the state district court adopted the State's supplemental findings and conclusions. The Court of Criminal Appeals did not adopt the lower court's findings and conclusions, but denied relief nonetheless. *Ex parte Burton*, AP–75,790, 2009 WL 874202 (Tex.Crim.App. Apr. 1, 2009). Federal review followed.

### V. Federal Habeas Proceedings

This Court appointed counsel to represent Burton throughout his federal habeas proceedings. Burton filed a petition for a federal writ of habeas corpus raising the following grounds for relief:

1. The State elicited testimony in the second punishment phase that violated Burton's Fifth Amendment right against self-incrimination and Sixth Amendment right to counsel.

2. Trial counsel[3] provided ineffective assistance by not adequately objecting to the introduction of Burton's challenged statements in the second punishment phase.

3. The trial court violated Burton's Eighth Amendment rights by not permitting him to deliver a statement of allocution without being subjected to cross-examination.

4. Appellate counsel failed to raise a complaint championing Burton's right to allocution.

5. Burton is actually innocent of capital murder.

Respondent has filed an answer arguing that Burton's claims do not merit habeas relief. (Docket Entry No. 5), Burton has filed a reply. (Docket Entry No. 7). Pursuant to court order, the parties have provided additional briefing. (Docket Entry Nos. 9, 12). This matter is now ripe for adjudication.

### LEGAL STANDARDS

The writ of habeas corpus provides an important, but limited, examination of an inmate's conviction and sentence. *See Harrington v. Richter*, —— U.S. ——, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011) ("[S]tate courts are the principal forum for

---

**2.** On its own motion, the Court of Criminal Appeals decided to reconsider its decision relating to Burton's first application. After reviewing the case anew, the Court of Criminal Appeals again adopted the lower court's findings and conclusions and thereby denied relief. *Ex parte Burton*, No. WR 64,360–02, 2009 WL 1076776 (Tex.Crim.App. Apr. 22, 2009).

**3.** Several attorneys have represented Burton throughout his various legal proceedings. The Court will generically refer to his prior attorneys as "trial counsel," "appellate counsel," and "state habeas counsel."

asserting constitutional challenges to state convictions."). Federal habeas corpus review provides a tightly circumscribed examination of state criminal judgments. While "the Framers considered the writ a vital instrument for the protection of individual liberty," *Boumediene v. Bush*, 553 U.S. 723, 743, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008), principles of finality, comity, and federalism narrow the scope of federal habeas review. *See Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983) ("The role of federal habeas proceedings ... secondary and limited."); *Engle v. Isaac*, 456 U.S. 107, 128, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) ("The States possess primary authority for defining and enforcing the criminal law."). With particular applicability to the instant case, the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") confines both the nature and scope of federal habeas review.

▮▮▮ The AEDPA honors the traditional bounds of federal habeas review by requiring an inmate to provide the state courts with the first opportunity to adjudicate his constitutional challenges. *See* 28 U.S.C. § 2254(b)(1). Federal practice further limits review to those claims that an inmate presented in compliance with state procedural law. *See Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004); *Lambrix v. Singletary*, 520 U.S. 518, 523, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997); *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). If an inmate fails to follow well-established state procedural requirements for attacking his conviction or sentence, and the state court hereby finds that he has defaulted consideration of any issues, a procedural bar forecloses federal review. *See Lambrix*, 520 U.S. at 523, 117 S.Ct. 1517; *Coleman*, 501 U.S. at 732, 111 S.Ct. 2546.

▮▮▮ To the extent that the state courts considered the merits of Burton's claims, the AEDPA "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in [28 U.S.C] §§ 2254(d)(1) and (d)(2)." *Richter*, —— U.S. at ——, 131 S.Ct. at 784. A federal court can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law.'" *Berghuis v. Thompkins*, —— U.S. ——, 130 S.Ct. 2250, 2258, 176 L.Ed.2d 1098 (2010) (quoting 28 U.S.C. § 2254(d)(1)); *see also Thaler v. Haynes*, —— U.S. ——, 130 S.Ct. 1171, 1174, 175 L.Ed.2d 1003 (2010); *Bell v. Cone*, 535 U.S. 685, 698, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Early v. Packer*, 537 U.S. 3, 7–8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). Thus, the AEDPA serves as a "guard against extreme malfunctions in the state criminal justice systems," not as a vehicle for error correction. *Richter*, —— U.S. at ——, 131 S.Ct. at 786 (citation omitted); *see also Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir.2011). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, —— U.S. at ——, 131 S.Ct. at 786.

▮▮▮ The AEDPA's focus on the application of Supreme Court precedent complements the traditional non-retroactivity doctrine established in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Federal habeas review exists to enforce, not create, constitutional law. *Teague* bars federal habeas courts from creating "a new rule" of constitutional law, that is, federal courts cannot "break[ ] new ground," "impose[ ] a new obligation on the

States or the Federal Government," or issue a decision that was "not dictated by precedent existing at the time the defendant's conviction became final." *Id.* at 301, 109 S.Ct. 1060. "[I]n addition to performing any analysis required by AEDPA, a federal court considering a habeas petition must conduct a threshold *Teague* analysis when the issue is properly raised by the state." *Horn v. Banks,* 536 U.S. 266, 272, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002).

With those standards in mind, the Court turns to Burton's grounds for relief.

## ANALYSIS

### I. Burton's Statements from a Prison Interview (claims one and two)

Burton raises two claims relating to testimony from his second punishment hearing. While his direct appeal was still pending before the Court of Criminal Appeals, a prison employee interviewed Burton. The State called the employee during the second punishment phase to relay comments Burton made during that interview. Burton first claims that the introduction of the prison testimony violated his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel (claim one/*Miranda*[4] claim). Burton also faults his trial attorneys for not making a specific-enough objection to the challenged testimony (claim two/*Strickland*[5] claim). Neither claim entitles Burton to federal habeas corpus relief.

### A. Background

After his conviction and first death sentence, the State of Texas transferred Bur-

ton to death row. On October 8, 1998, J.P. Guyton, a prison sociologist,[6] met with Burton to perform a "classification interview." Mr. Guyton's testimony in the second punishment phase explained the purpose of this interview. A prison sociologist "interview[s] all inmates as they c[o]me in from the county jails to compile a social and criminal history mainly for use in the classification process." Tr. 2 Vol., 16 at 89. The classification process is "basically lumping together like inmates to make sure that they get assigned to an appropriate unit and an appropriate custody level with other inmates like them.... The focus of the sociology interview is to get inmates on a unit which is for like inmates." Tr. 2 Vol. 16 at 90.

Burton's classification interview resulted in information which the State would use at trial to prove his future danger to society. Burton told Mr. Guyton that, as a teenager, he both used and sold drugs. At issue in the instant proceeding, when Mr. Guyton asked the routine question: "Our records indicate that you did [the offense for which you were convicted]. Can you tell me why you did that?," Burton answered: "Just something I couldn't help." Tr. 2 Vol. 16 at 102.

The State provided defense counsel written notice of the intent to use Burton's statements to Mr. Guyton in the second punishment phase. The notice specifically mentioned Burton's admissions of marijuana use and drug sales. Clerk's Record 2 at 326. Trial counsel objected to Mr. Guy-

---

4. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

6. According to the Texas Department of Criminal Justice, a prison sociologist "[i]nterviews

newly received offenders to gather sociological data, identifies offenders that are known or suspected gang members with enemies in assigned units, makes recommendations to ensure appropriate housing; and compiles information to make appropriate unit custody, housing, and general activity plan assignments." (Docket Entry No. 1, Exhibit 1).

ton's testimony because of the "interrogation of [his] client without warnings or benefit of counsel," though he limited his objection to the "extraneous offense[s]." Tr. 2 Vol. 16 at 36. After a pretrial hearing in which Mr. Guyton testified, the trial court allowed Burton's statements to come before the jury. Tr. 2 Vol. 16 at 46.

The State called Mr. Guyton as its last trial witness. Mr. Guyton told the jury about Burton's admission to committing drug offenses and relayed his justification for the murder. The State's closing arguments repeatedly emphasized Burton's statement that the murder was "[j]ust something [he] couldn't help" to show his remorselessness and his inability to stop himself from killing again. The prosecution described that statement as "so harmful to [Burton]" because "[w]hat he is saying is 'Yes, yes. There's a probability I'm going to do this again.' But we don't know why or when, we just know there's a probability because 'it's just something I couldn't help.'" Tr. 2 Vol. 17 at 58–59.

### B. Burton's State–Court Challenges to Mr. Guyton's Testimony

Burton challenged Mr. Guyton's testimony both on appeal and on habeas review after his second punishment phase. How Burton raised his complaints and how the state court dealt with them will guide the course of federal review. In particular, application of the AEDPA's deferential standards requires a close review of the interplay between the state district court's recommendations and the Court of Criminal Appeals' decisions in this case.

#### 1. Direct Appeal

Burton first challenged Mr. Guyton's testimony on direct appeal, alleging that the State violated his Fifth and Sixth

Amendment rights because he did not receive *Miranda* warnings before the interview. Burton's appellate briefing, however, did not specify which portions of Mr. Guyton's testimony were problematic. Pointing to TEX.R.APP. P. 33.1 which requires that a party object "with sufficient specificity to make the trial court aware of the complaint," the Court of Criminal Appeals concluded that Burton's complaint about his reason for killing was not "preserved for appeal because [he] confined his [trial] objections to extraneous offenses." After finding that trial counsel had only preserved error "with regard to the admissibility of the two extraneous offenses mentioned during the interview," the Court of Criminal Appeals found no reversible error.

#### 2. The First Habeas Decision

Burton's second state habeas action raised two complaints relating to Mr. Guyton's testimony. Burton's first claim (the *Miranda* claim) largely reiterated his appellate complaint that the introduction of Mr. Guyton's testimony violated his Fifth and Sixth Amendment rights. Second State Habeas Record at 21–35. On habeas review, however, Burton specified that the trial court should not have allowed Mr. Guyton to testify about why he killed.

Burton's second claim faulted trial counsel's representation under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for not sufficiently objecting to Mr. Guyton's testimony. Second State Habeas Record at 35–42. Burton complained that trial counsel should have objected to the testimony about why he killed. Trial counsel provided an affidavit explaining that he had intended to object to Mr. Guyton's testimony on that basis.[7] How the state courts handled Bur-

---

7. Trial counsel stated:

Prior to trial, I was made aware of the proposed testimony at trial of a Mr. J.P. Guyton, an employee of the Texas Depart-

ment of Criminal Justice, who had conducted an interview with Mr. Burton at the Ellis Unit on October 8, 1998, shortly after he was originally sentenced to death. I was

ton's *Strickland* claim has created difficult questions about AEDPA deference.

The state district court issued findings of fact and conclusions of law on March 10, 2006. As a preliminary matter, the state district court held that Burton defaulted his habeas *Miranda* claim because (1) he had litigated the challenge to the drug offenses on direct appeal and (2) trial counsel had not objected to his justification for the killing. The state district court's decision went on to discuss the merits of his *Miranda* and *Strickland* claims conjointly. Specifically, the state district court found that Mr. Guyton's interview did not amount to "custodial interrogation" for *Miranda* purposes. With that understanding, the state district court found no *Miranda* violation or *Strickland* error.[8]

The Court of Criminal Appeals thereafter issued a succession of orders that have muddied the AEDPA's influence in this case. The Court of Criminal Appeals entered an order on November 7, 2007, stating that "[w]ith respect to [Burton's] allegations (1) [that is, the *Miranda* claim],

(3), and (4), we have reviewed the record and adopt the trial judge's findings." The Court of Criminal Appeals, however, did not enter any judgment with regard to Burton's *Strickland* claim. Instead, the court stated: "we direct that this case be filed and set for submission[.]" *Ex parte Burton*, WR–64,360–01, 2007 WL 3289679 (November 7, 2007).

The State filed a motion for clarification of the November 7, 2007 order.[9] The State was "unsure whether briefing should be submitted" regarding whether the prison interview "constituted custodial interrogation," "whether trial counsel should have objected," or both. In a December 19, 2007 order purporting to clarify its earlier action, the Court of Criminal Appeals stated that "[a]lthough the trial court's conclusions of law [regarding Burton's *Strickland* claim] were considered, none were adopted regarding any of the claims, nor were the findings of fact regarding allegation (2) [his *Strickland* claim] adopted." Based on that order, Respondent now concedes that the conclusions of law from the

---

**8.** aware that the interview was conducted without counsel and the information elicited from Mr. Burton at that interview would seriously damage him at his second trial on punishment. That is why I objected to its admission outside the presence of the jury.

I was of the opinion that my objection was specific and had received a specific ruling. If the Court contends that I did not make the objection specific enough, or did not receive a specific enough ruling, and thus resulted in a waiver, it was not trial strategy.

Second State Habeas Record at 70. Burton also supported his claim with an affidavit from his first appellate attorney attesting that, had she known that the State would use the results of the classification interview against Burton, she would have cautioned him not to participate in the interview without her being present. Second State Habeas Record at 67–68.

**8.** The state district court concluded that "the trial court properly admitted Guyton's testi-

mony concerning [Burton's] statement regarding the instant offense because Guyton's 1998 prison classification interview of [Burton] did not constitution interrogation requiring the administration of *Miranda* warnings." Second State Habeas Record at 129. Specifically, the state district court relied on Texas case law finding that somewhat-similar situations did not amount to "custodial interrogation" Second State Habeas Record at 129–30. "Because the trial court properly admitted Guyton's testimony regarding [Burton's] prison classification interview," Second State Habeas Record at 129, the state district court also recommended that the Court of Criminal Appeals deny Burton's *Strickland* claim.

**9.** The State pointed out that findings of fact 17, 19, 21, 22, and 23 all related to the first claim, as did conclusions 1 through 3. The remainder of the findings (14–16 and 20) and conclusions (4 and 5) related to Burton's ineffective-assistance-of-counsel claim.

lower court's first order do not merit AEDPA deference. (Docket Entry No. 9 at 6).

Respondent, however, still maintains that the AEDPA requires deference to the state district court's factual findings—at least with regard to the *Miranda* claim—primarily because the Court of Criminal Appeals "did not reject the findings of fact that it had previously adopted." (Docket Entry No. 9 at 7). The December 19, 2007 order, however, still leaves the prior adoption of many factual findings unclear. Because "an analysis of an ineffective assistance of counsel claim necessarily includes consideration of the underlying act or omission that gave rise to the allegedly deficient conduct," the Court of Criminal Appeals' December 19, 2007 order also required the parties to brief the following issues:

(1) whether all questions asked and answers or statements obtained in a classification interview are admissible in court, or whether some questions asked and answers or statements obtained can exceed the scope of a permissible classification interview and become product of custodial interrogation;

(2) whether the question of why [Burton] committed the instant crime exceeded the permissible scope of the classification interview and became custodial interrogation; and

(3) whether [Burton's] counsel performed deficiently when he failed to specifically object to the testimony on this basis at trial.

*Ex parte Burton*, No. AP–75,590 (Tex. Crim.App. Dec. 19, 2007). In other words, the Court of Criminal Appeals treated the state district court's primary finding—that there had not been a custodial interrogation—as if it were unresolved.

The parties subsequently provided additional briefing. Burton's briefing for the first time included an affidavit describing his version of the events surrounding the classification interview. Given his construction of the circumstances, Burton argued that he was "in custody" for *Miranda* purposes.

In a June 18, 2008 order, however, the Court of Criminal Appeals remanded the case to the state district court for additional fact finding. Two concerns drove the remand. First, the Court of Criminal Appeals had recently handed down a decision in *Herrera v. State*, 241 S.W.3d 520 (Tex. Crim.App.2007), a case dealing with *Miranda's* application in the prison setting.[10] Second, the Court of Criminal Appeals wanted the state district court to reconsider Mr. Guyton's interview in the context of Burton's new affidavit. As a subsidiary factor in that inquiry, the Court of Criminal Appeals also directed the lower court to decide whether Mr. Guyton was a "state agent" for *Miranda* purposes. *Ex parte Burton*, No. AP–75,790, 2008 WL 2486459 (Tex.Crim.App. June 18, 2008).

The issues left open by the Court of Criminal Appeals involved the merits of Burton's *Miranda* claim, though they did not impact the procedural default of that claim. The December 19, 2007, order suggested that the Court of Criminal Appeals had not adopted any factual finding regarding whether the prison interview was a custodial interrogation, even though the state district court had decided that issue. The Court of Criminal Appeals, in effect, rejected the factual findings *sub silentio*. The findings of fact supporting the *Mi-*

---

**10.** The Court of Criminal Appeals in *Herrera* held that "incarceration does not always constitute 'custody' for *Miranda* purposes when an inmate is questioned by law enforcement officials regarding an offense separate and distinct from the offense for which he was incarcerated." *Herrera*, 241 S.W.3d at 531.

*randa* issue in the state district court's first order, therefore, can only merit AEDPA deference insofar as they are not impacted by the subsequent appellate court orders. *See Walbey v. Dretke,* 100 Fed. Appx. 232, 234–36 (5th Cir.2004); *Singleton v. Johnson,* 178 F.3d 381, 384–85 (5th Cir.1999); *Micheaux v. Collins,* 944 F.2d 231, 232 (5th Cir.1991).

*3. The Second State Habeas Decision*

On remand, the state district court ordered both parties to file any additional affidavits and any proposed findings. Second State Habeas Record at 150. The State submitted an affidavit from Robert Compton, an Assistant Intake Administrator for the Texas Department of Criminal Justice, giving additional details about the sociological interview for death row inmates. Second State Habeas Record at 153–56. Both parties submitted proposed findings.

The state district court's detailed factual findings extensively reviewed the prison classification process and Mr. Guyton's role therein. Observing that the interview was unrelated to the criminal process and Mr. Guyton was unauthorized to engage in law enforcement, the state district court found that the "classification interview does not constitute 'custody' for *Miranda* purposes; that *Miranda* warnings were not required prior to the interview; and, that Guyton was not an agent of the State so that *Miranda* warnings were required." Second State Habeas Record at 191. In addition, Burton did not show that "he was in custody during the routine prison interview beyond his incarceration for purposes of his judgment and sentence for the instant offense." Second State Habeas Record at 192. Because Burton "fail[ed] to show that his prison interview constitutes

custodial interrogation requiring *Miranda* warnings," the state district court found no deficient performance in trial counsel's failure to lodge an appropriate objection. Second State Habeas Record at 193–94.[11]

The Court of Criminal Appeals again did not explicitly adopt those findings. Instead, the Court of Criminal Appeals reviewed the relevant procedural history and commented:

> After thoroughly reviewing the parties' briefs, the trial judge's findings of fact and conclusions of law, as well as the relevant case law, we cannot fault Burton's trial counsel for failing to object. This particular underlying Fifth Amendment issue is unsettled; therefore, counsel cannot be found deficient under the facts involved here. Relief is therefore denied.

*Ex parte Burton,* No. AP–75,790, 2009 WL 874202 (Tex.Crim.App. Apr. 1, 2009) (footnote omitted). The parties debate which, if any, of the state district court's second round of findings and conclusions survived the Court of Criminal Appeals' review.

The Court will consider the procedural status and legal merit of Burton's *Miranda* and *Strickland* claims.

**C. Procedural Bar of Burton's *Miranda* Claim**

 Burton's complaint that Mr. Guyton should have administered a *Miranda* warning comes before the Court under the limitations of federal habeas corpus review. The state habeas court found that Burton had procedurally defaulted his *Miranda* claim. If an inmate fails to follow well-established state procedural requirements for attacking his conviction or sentence, and the state court thereby finds

---

11. Alternatively, the lower habeas court concluded that "error, if any, in the admission of Guyton's testimony is harmless; [Burton] fail[ed] to show that the results of the pro-

ceeding would have been different in light of the facts of the offense, [his] criminal history; and other presented punishment evidence." Second State Habeas Record at 194.

that he has defaulted judicial review, a procedural bar forecloses federal adjudication. *See Lambrix,* 520 U.S. at 523, 117 S.Ct. 1517; *Coleman,* 501 U.S. at 732, 111 S.Ct. 2546. A procedural bar, therefore, precludes federal review of Burton's first ground for relief.

Judicial accommodation prevents a state procedural default from becoming an insurmountable barrier to federal review. The Supreme Court excuses a procedural bar if an inmate "can demonstrate *cause* for the default and *actual prejudice* as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a *fundamental miscarriage of justice.*" *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546 (emphasis added). A petitioner shoulders the burden of overcoming this procedural hurdle. *See McCleskey v. Zant,* 499 U.S. 467, 493–94, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

Burton seems to allege that trial counsel's failure to make a proper objection should forgive the default of his *Miranda* claim. For the reasons that the Court discusses with regard to his *Strickland* claim, Burton has not shown that he can overcome the procedural default of his *Miranda* claim. The Court, therefore, will deny Burton's first ground for relief.[12]

### D. Burton's *Strickland* Claim

Burton claims that trial counsel rendered deficient performance by not making a specific-enough objection to Mr. Guyton's testimony. Under *Strickland's* two-pronged inquiry, "[t]o establish ineffective assistance of counsel 'a defendant must show both deficient performance by

counsel and prejudice.'" *Premo v. Moore,* —— U.S. ——, 131 S.Ct. 733, 739, 178 L.Ed.2d 649 (2011)(quoting *Knowles v. Mirzayance,* 556 U.S. 111, 122, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009)). "Surmounting *Strickland's* high bar is never an easy task[.]" *Padilla v. Kentucky,* —— U.S. ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). When the state courts have already adjudicated the merits of a *Strickland* claim, "[a] state court must be granted deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter,* —— U.S. at ——, 131 S.Ct. at 785. The AEDPA gives wide latitude to the state adjudication of a *Strickland* claim through a "doubly deferential judicial review." *Knowles,* 556 U.S. at 123, 129 S.Ct. 1411; *see also Cullen v. Pinholster,* —— U.S. ——, 131 S.Ct. 1388, 1410, 179 L.Ed.2d 557 (2011).

#### 1. Deficient Performance

The Court of Criminal Appeals' rejection of Burton's *Strickland* claim focused on the deficient-performance prong. The parties have debated the application of AEDPA deference to the findings and conclusions the lower habeas court made in its various recommendations. The parties have extensively discussed whether the prison classification interview amounted to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602. The state district court's analysis tracked the traditional factors in a *Miranda* analysis, finding that (1) Mr. Guyton was not a law

---

12. The state district court alternatively denied Burton's *Miranda* claim. Regardless of whether the AEDPA entitles any factual findings to deference, Burton still must show that the state court's ultimate decision—the rejection of his *Miranda* claim—was contrary to,

or an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1). For the reasons discussed more fully with regard to his *Strickland* claim, Burton has not proven that the state courts were unreasonable in denying relief.

enforcement officer, (2) the interview did not constitute custody beyond that generally present in the prison settling, and, thus, (3) *Miranda* warnings were not needed before or during the classification interview. Second State Habeas Record at 190–192. The Court of Criminal Appeals, however, confined itself to a single question: did counsel's representation comply with *Strickland*? In other words, was trial counsel ineffective for not objecting where "[t]his particular underlying Fifth Amendment issue is unsettled[?]"

The Court of Criminal Appeals found resolution of each underlying component of the *Miranda* inquiry unnecessary to a resolution of Burton's *Strickland* claim. Given federal habeas review's focus on the state courts' ultimate decision, "not every jot of its reasoning," *Santellan v. Cockrell,* 271 F.3d 190, 193–94 (5th Cir.2001), the Court likewise need not ferret out the tricky questions of whether the state district court's resolution of each *Miranda* factor merits AEDPA deference or was ultimately correct. The most important question is whether the Supreme Court's *Miranda* case law relating to prison inmates was sufficiently clear that the Court of Criminal Appeals was not objectively unreasonable in finding no deficient performance.

■■■■■ The convoluted and confusing procedural history in this case suggests that the Court of Criminal Appeals was troubled by the question of whether a *Miranda* warning was required before portions of Mr. Guyton's interview. Nevertheless, no *Strickland* deficient performance occurs when trial counsel fails to raise an objection based on "unsettled" law. *Givens v. Cockrell,* 265 F.3d 306, 310 (5th Cir.2001); *Sharp v. Johnson,* 107 F.3d 282, 289–90 (5th Cir.1997); *see also Jones v. United States,* 224 F.3d 1251, 1258 (11th Cir.2000) ("[W]e are not prepared to say categorically that counsel's

failure to [preserve an argument] constituted prejudicial, ineffective nonfeasance while the law was still unsettled."); *Smith v. Singletary,* 170 F.3d 1051, 1054 (11th Cir.1999) ("[T]he rule that an attorney is not liable for an error in judgment on an unsettled proposition of law is universally recognized[.]") (quotation omitted). Trial counsel cannot be faulted for not objecting when the law "was conceptually amorphous and unsettled at the time of ... conviction and appeal." *Sharp,* 107 F.3d at 290.

■■■■■ Neither the law nor the facts establish that trial counsel could have successfully lodged a *Miranda* objection. At the time of trial, the law concerning *Miranda's* influence in the prison setting was unclear. Burton argues that trial counsel should have relied on *Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), to argue that he was " 'in custody' for the purposes of custodial interrogation found in *Miranda* " (Docket Entry No. 1 at 20). The Supreme Court in *Mathis* found that an inmate serving a prison sentence for one crime was "in custody" when a known state agent interrogated him in prison about another, unrelated crime. *Mathis,* however, is not dispositive to the question before the state courts in this case. The "holding in *Mathis* is simply that a prisoner who otherwise meets the requirements for *Miranda* custody is not taken outside the scope of *Miranda* " when "[a] criminal investigation had not been commenced at the time of the interview, and the prisoner was incarcerated for an unconnected offense." *Howes v. Fields,* —— U.S. ——, 132 S.Ct. 1181, 1188, 182 L.Ed.2d 17 (2012). To date, the Supreme Court has not held that *Miranda* rights are triggered simply because an individual is incarcerated. *See Maryland v. Shatzer,* —— U.S. ——, 130 S.Ct. 1213, 1224, 175 L.Ed.2d 1045 (2010); *see also Wilson,* 641 F.3d at 101 ("[T]he mere fact

of the prison setting alone is insufficient to trigger the *Miranda* requirements."). *Mathis* alone would not have required the Texas courts to find that Burton was "in custody," and thus suppressed Mr. Guyton's testimony, had trial counsel objected.

 The law otherwise did not provide a definitive answer to the specific issues addressed by the lower habeas court, whether Burton was in custody and whether Mr. Guyton was acting as a law enforcement officer. The Supreme Court has "never decided whether incarceration constitutes custody for *Miranda* purposes, and has indeed explicitly declined to address the issue." *Shatzer*, ⸺ U.S. at ⸺, 130 S.Ct. at 1224. The Supreme Court had clarified before Burton's trial that "[t]he bare fact of custody may not in every instance require a warning even when the suspect is aware that he is speaking to an official." *Illinois v. Perkins*, 496 U.S. 292, 299, 110 S.Ct. 2394, 110

L.Ed.2d 243 (1990). The law did definitively show that Burton was in custody during the classification interview.

In addition, the law at the time of trial did not definitively designate Mr. Guyton a state agent—that is, acting as the equivalent of a law-enforcement official—when he performed the classification interview. The Supreme Court has never held that a prison employee performing duties unrelated to law enforcement must deliver *Miranda* warnings. *See Dickerson v. United States*, 530 U.S. 428, 435, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (reiterating that *Miranda* "laid down 'concrete constitutional guidelines for *law enforcement agencies* and courts to follow'") (emphasis added). The Fifth Circuit has refused to extend *Mathis* to individuals not serving in a law-enforcement capacity. *See Powell v. Quarterman*, 536 F.3d 325, 343 (5th Cir. 2008); *United States v. Borchardt*, 809 F.2d 1115, 1118 (5th Cir.1987).[13] Burton

---

**13.** Burton also relies on *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) to argue that Mr. Guyton should have delivered a *Miranda* warning before he "radically departed from any neutral information the . . . interview may have ever contained[.]" (Docket Entry No. 1 at 33). In *Smith*, the Supreme Court held that a court-appointed psychiatrist's testimony violated the defendant's constitutional rights because he had not delivered the *Miranda* warnings before beginning a competency evaluation. The *Smith* Court, however, explicitly stated that it did not "hold that the same Fifth Amendment concerns are necessarily presented by all types of interviews and examinations that might be ordered or relied upon to inform a sentencing determination." *Smith*, 451 U.S. at 469 n. 13, 101 S.Ct. 1866. The Supreme Court has limited *Smith* to the "distinct circumstances" of that case and has "never extended [its] Fifth Amendment holding beyond its particular facts." *Penry v. Johnson*, 532 U.S. 782, 795, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001). On that basis alone the Court of Criminal Appeals' decision was not contrary to, or an unreasonable application of, federal law. *See Ramdass v. Angelone*, 530 U.S. 156, 165–66, 120 S.Ct. 2113, 147 L.Ed.2d 125

(2000) ("[A] a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts our prior holdings or if it reaches a different result from one of our cases despite confronting indistinguishable facts A state determination may be set aside under [the unreasonable application standard] if, under clearly established federal law, the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled."). Moreover, *Smith* provides no greater protection that *Mathis*. *Smith* required a *Miranda* warning because the psychiatrist was effectively "an agent of the State recounting unwarned statements made in a postarrest custodial setting[.]" *Smith*, 451 U.S. at 467, 101 S.Ct. 1866; *see also Penry*, 532 U.S. at 794, 121 S.Ct. 1910. *Smith* likewise requires a *Miranda* only warning when the interviewer acts as "an agent of the State." *Powell v. Quarterman*, 536 F.3d 325, 342 (5th Cir.2008). Unlike the defendant in *Smith*, Burton was not "faced with a phase of the adversary system," but was participating in the routine administration of the prison system. *Smith*, 451 U.S. at 467, 101 S.Ct. 1866. The record does not hint that, at the time of the classification interview, any-

has not provided any federal authority that would designate Mr. Guyton a state agent for *Miranda* purposes.

 Texas law has likewise held that "a state employee must be acting as an agent of law enforcement pursuant to a police practice before the safeguards attendant to custodial interrogation come into play. Only under those circumstances do non-law enforcement personnel become agents of the State for purposes of distinguishing custodial interrogation from non-custodial interrogation." *Paez v. State,* 681 S.W.2d 34, 37 (Tex.Crim.App.1984); *see also Cates v. State,* 776 S.W.2d 170, 173 (Tex.Crim.App.1989) (limiting *Miranda's* impact to someone acting as "an agent of law enforcement in the State of Texas"). A *Miranda* warning is only necessary when a state actor "deliberately elicits incriminating statements from an in-custody defendant solely for the purpose of helping the police gather evidence against the defendant." *Escamilla v. State,* 143 S.W.3d 814, 824 (Tex.Crim.App.2004). Also, the Court of Criminal Appeals has found no *Miranda* warning necessary when the interview was not "in connection with [the] offense" for which he had been convicted, particularly when the interview occurred after trial. *Jenkins v. State,* 912 S.W.2d 793, 811 (Tex.Crim.App.1993). Given Texas law, Burton has not shown that trial counsel could have made a strong objection based on *Miranda.*

Given the unsettled nature of federal and state law relating to *Miranda's* influence on prison interviews, the Court of Criminal Appeals was not unreasonable for finding no error in trial counsel's failure to object. Regardless of the integrity of the

state district court's specific findings about the substantive *Miranda* claim, Burton has not shown that the Court of Criminal Appeals' ultimate conclusion of no *Strickland* deficient performance was contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1).

*2. Actual Prejudice*

 Burton has also failed to show *Strickland* prejudice. To meet *Strickland's* prejudice prong, Burton must prove the "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. When a petitioner alleges prejudice from trial counsel's failure to raise an objection, he "must show there was a reasonable probability that the trial court would have granted it, or would have reversibly erred by refusing it." *Amos v. Thornton,* 646 F.3d 199, 209 (5th Cir.2011) (quotation omitted); *see also Kimmelman v. Morrison,* 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) ("[A] meritorious ... issue is necessary to the success of a Sixth Amendment claim[.]"), *United States v. Flores–Ochoa,* 139 F.3d 1022, 1024 (5th Cir.1998) (determining that a defendant cannot show that he was prejudiced where "there is no evidence that the court would have granted the motion."); *Wilson v. Henry,* 185 F.3d 986, 990 (9th Cir.1999) (finding that *Strickland's* prejudice inquiry requires a petitioner to show that (1) had his counsel filed the motion, it is likely that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is likely that there would have been an outcome more favorable to him).[14] Because *Miranda's* application to the facts

---

one anticipated that Burton's "future dangerousness would be a specific issue" resulting from his answers. *Penry,* 532 U.S. at 794, 121 S.Ct. 1910. The circumstances the Supreme Court addressed in *Smith* were factually and legally distinct from those in the instant case.

14. Because the convoluted state court process does not clearly show whether AEDPA deference applies to *Strickland's* prejudice prong with respect to this claim, the Court reviews the issue *de novo.* The outcome would be the same under the AEDPA's deferential scheme.

of this case was unsettled, it is not clear that the trial court would have suppressed Mr. Guyton's testimony if trial counsel made the desired objection. Similarly, Burton has not convincingly shown that the Court of Criminal Appeals would have found *Miranda* error even had trial counsel made a specific-enough objection.

Furthermore, Burton has not shown that the jury would have responded differently had Mr. Guyton omitted the challenged statement from his testimony. Another jury had already given Burton a death sentence without knowing why he killed. While included in the prosecutor's closing, the statement was far from the only indication of Burton's violence or remorselessness. The jury already had substantial evidence of Burton's lawlessness including his commission of numerous burglaries. Burton wantonly destroyed property during those burglaries. The jury knew that Burton used and sold drugs. Finally, the circumstances of the murder strongly supported a death sentence. As the Court of Criminal Appeals observed in the context of Burton's sufficiency-of-the-evidence claim on direct appeal:

> [Burton] rode up behind [the] lone female, grabbed her from behind, dragged her into the woods, strangled her into unconsciousness, then tried to sexually assault her. Eventually, he strangled her.
>
> When the police questioned him about the crime, he at first denied any knowledge or responsibility. He confessed only when the police confronted him with several inconsistencies in his story. Although [his] criminal history consisted only of numerous burglaries committed years earlier, a rational jury could have inferred from the apparent randomness and unpredictability of the instant crime that there was indeed a probability that [he] would commit future criminal acts of violence that would constitute a continuing threat to society.

*Burton v. State,* No. AP–73,204 at 4, 2004 WL 3093226 (Tex.Crim.App. May 19, 2004). Because the jury already had before it substantial information that would justify a death sentence, Burton has not shown a reasonable probability of a different result had counsel made the objection he emphasizes on federal review.

Perhaps a zealous attorney would have challenged Mr. Guyton's testimony for the reasons Burton outlines in his federal habeas petition. Burton, however, has not shown that the state habeas court was unreasonable or wrong in denying his *Strickland* claim. The Court, therefore, will deny his second ground for relief.

## II. The Alleged Right to Allocution without Cross–Examination (claims three and four)

Burton raises two claims arguing that the Constitution should allow a criminal defendant to give a statement of allocution free from cross-examination. A statement of allocution is "[a]n unsworn statement from a convicted defendant to the sentencing judge or jury in which the defendant can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence." BLACK'S LAW DICTIONARY 83 (8th ed.2004). Burton complains that the trial counsel did not let him express remorsefulness to the jury without being subjected to the rigors of cross-examination.

Before the second punishment phase, Burton filed a "Motion to Introduce the Defendant's Statement of Allocution, Free From Cross–Examination by the State, Reflecting His Remorse for the Offense." Clerk's Record 2 at 355. The trial court denied that motion. Clerk's Record 2 at 364. After the State rested its case in the second punishment phase, Burton reurged his motion. Tr. 2 Vol. 16 at 108–09. Trial

counsel explained that Burton would have expressed remorse for the killing, described the pain and guilt he felt, and said that he wished he could "take it all back." Tr. 2 Vol. 16 at 109–110. The trial court summarily denied the oral motion. Tr. 2 Vol. 16 at 109–10. Burton did not testify at the second punishment phase.[15]

In Burton's second state habeas action, he again set forth a constitutional right to present a personal statement of remorse without being subject to cross-examination. Burton also faulted his appellate attorney for not raising the allocution issue on direct appeal. The state habeas court found that Burton procedurally defaulted his right-to-allocution claim by not raising it on direct appeal. Second State Habeas Record at 130.[16]

In the alternative, the state habeas court found no error in the denial of his trial motions. Second State Habeas Record at 131. The state habeas court found that "a defendant who takes the stand as a witness is subject to cross-examination and impeachment in the same manner as any other witness." Second State Habeas Record at 128. Accordingly, appellate counsel did not provide deficient representation by not raising the issue on direct appeal. Further, the state habeas court found that any error did not harm Burton because the senselessness and brutality of the murder would have eclipsed any statement of remorse. Second State Habeas Record at 131–32.

Burton's federal habeas petition again raises his allocution claim and the related ineffective-assistance-of-appellate-counsel issue. Burton's federal habeas petition recognizes that neither the Texas state nor the federal courts have found a constitutional right for a defendant to testify without being subjected to cross-examination. (Docket Entry No. 1 at 50–51). Burton argues that recent developments in other States, and the federal constitution's heightened protection for mitigating evidence, should allow the creation of a new constitutional right to express remorse.

 Long-standing limitations on federal habeas review prevent this Court from granting relief. Burton does not complain that the trial court or trial counsel prevented him from taking the stand. The record indicates that nothing impaired Burton's ability to provide testimony in his own behalf. His complaint is that the fear of cross-examination hindered his ability to express remorse to the jury. The Fifth Circuit, however, has explicitly held that "a criminal defendant in a capital case does not possess a constitutional right to make an unsworn statement of remorse before the jury that is not subject to cross-examination." *United States v. Hall*, 152 F.3d 381, 396 (5th Cir.1998), *abrogated on other grounds by United States v. Martinez–Salazar*, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000); *see also United States v. Jackson*, 549 F.3d 963, 980 (5th Cir. 2008). Because the Constitution does not

**15.** After the jury delivered its verdict Burton asked to speak to the victim's family. He apologized for the murder and the pain he caused. Tr. 2 Vol. 18.

**16.** Respondent mentions, but does not emphasize, the state habeas court's invocation of the procedural-default doctrine with respect to this claim. Because Burton's claim is clearly on unsound constitutional footing, the Court will likewise focus on other reasons for which habeas relief is not available. In par-

ticular, though Respondent does not emphasize *Teague's* non-retroactivity bar, the Court finds that *Teague* forecloses relief. *See Caspari v. Bohlen*, 510 U.S. 383, 389, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) (observing that courts may address *Teague sua sponte*); *Lambrix*, 520 U.S. at 525, 117 S.Ct. 1517 ("Judicial economy might counsel giving the *Teague* question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.").

recognize a right to allocution, the non-retroactivity principle established in *Teague v. Lane* bars this Court from granting relief. Without a strong basis in constitutional law, Burton cannot show that the state habeas court's denial of his third claim was "contrary to, or an unreasonable application of, federal law." 28 U.S.C. § 2254(d)(1).

▮ Similarly, Burton's fourth ground for relief fails. Given the lack of a firm legal basis for his argument, appellate counsel cannot have provided unconstitutionally infirm representation in not advocating the creation of a right to allocution. Accordingly, the Court denies Burton's third and fourth federal habeas claims.

## III. Actual Innocence (claim five)

Burton's fifth claim asserts that he is actually innocent. Burton makes a three-pronged attack on the evidence proving his guilt. Burton relies on: (1) new evidence suggesting that the victim died significantly before the time the State alleged at trial; (2) an affidavit in which a trial witness recanted his testimony; and (3) allegations that the police coerced Burton's confession. Taking those arguments together, Burton alleges that the due process clause prevents his execution for a crime he did not commit.

▮ A person who stands trial enjoys a presumption of innocence, and the State must prove his guilt beyond a reasonable doubt. "Society's resources have been concentrated at [a criminal trial] in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens." *Wainwright v. Sykes*, 433 U.S. 72, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *see also McFarland v. Scott*, 512 U.S. 849, 859, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994) (stating that a "criminal trial is the 'main event' at which a defendant's rights are to be determined"). But "[o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears." *Herrera v. Collins*, 506 U.S. 390, 399, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Thus, by the time an inmate invokes federal habeas jurisdiction he "comes before the habeas court with a strong—and in the vast majority of the cases conclusive—presumption of guilt." *Schlup v. Delo*, 513 U.S. 298, 326, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *see also Herrera*, 506 U.S. at 399–400, 113 S.Ct. 853 (stating that a petitioner "does not come before the Court as one who is 'innocent,' but, on the contrary, as one who has been convicted by due process of law"); *Bosley v. Cain*, 409 F.3d 657, 664 (5th Cir.2005) ("[T]here is no presumption of innocence at a habeas proceeding.").

▮ The Supreme Court has not accepted actual innocence as a cognizable ground for federal habeas corpus relief. In *Herrera*, the Supreme Court stated that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." 506 U.S. at 400, 113 S.Ct. 853. Similarly, in *Schlup*, the Supreme Court again noted that a petitioner's "claim of innocence does not by itself provide a basis for relief." 513 U.S. at 315, 115 S.Ct. 851. Following that reasoning, the Fifth Circuit has repeatedly and unequivocally held that the Constitution does not endorse an independent actual-innocence ground for relief. *See Kinsel v. Cain*, 647 F.3d 265, 270 n. 20 (5th Cir. 2011); *Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir.2006); *Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir.2003); *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000); *Graham v. Johnson*, 168 F.3d 762, 788 (5th Cir.1999); *Robison v. Johnson*,

151 F.3d 256, 267 (5th Cir.1998); *Lucas v. Johnson*, 132 F.3d 1069, 1074–75 (5th Cir. 1998). This Court cannot grant relief on Burton's actual-innocence claim.

Even assuming that actual innocence constitutes an actionable basis for habeas relief, Burton has not made a strong showing of innocence. Unlike federal law, Texas law recognizes an inmate's innocence as a ground for relief. *See Ex parte Elizondo*, 947 S.W.2d 202 (Tex.Crim. App.1996); *State ex rel. Holmes v. Court of Appeals for the Third District*, 885 S.W.2d 389 (Tex.Crim.App.1994). When Burton asserted his innocence in his initial state habeas application, the state habeas court exhaustively addressed each portion of Burton's actual-innocence argument.[17] In that context, the state habeas court found that a reasonable juror could have convicted Burton despite the evidence he relied on to prove actual innocence. The state habeas court based that assessment on two separate factors: (1) the unpersuasive nature of Burton's new evidence and (2) the strength of the trial evidence pointing to his guilt.

With regard to the first factor, the state habeas court found each component of Burton's actual-innocence argument unpersuasive. In specific, the state habeas court observed:

- Burton's trial attorney was aware of, and vigorously focused cross-examination on, inconsistencies among the witnesses' testimony regarding the time of the murder;

- the expert witness' affidavit stating that the victim died significantly before the time established by the trial testimony was unpersuasive;

- the witness who recanted his trial testimony was not credible because (1) trial counsel had already vigorously attempted to impeach him about his testimony; (2) the witness' trial testimony matched the description of the crime from Burton's confession; (3) the witness voluntarily provided his testimony and, contrary to the assertions in his habeas affidavit, did not experience any coercion from the State to testify;

- a habeas expert's opinion that Burton did not voluntarily confess was unpersuasive in light of the trial evidence.

As a second thrust of its decision, the state habeas court found that strong evidence supported Burton's conviction. The state habeas court pointed to forensic evidence linking Burton to the crime. Significant evidence corroborated inmate testimony that incriminated Burton. Most importantly, trial testimony proved that Burton had voluntarily confessed.

In short, the state habeas court found Burton's actual-innocence argument unpersuasive. Given the deference this Court must pay state habeas decisions under the AEDPA, Burton has not made strong showing that he could succeed if an actual innocence ground for relief existed. The Court, therefore, denies relief on Burton's fifth claim.

---

17. In rejecting the claim, the state habeas court found that, rather than asserting his innocence, Burton's claim actually attacked the sufficiency of the evidence regarding his guilt. Because Texas law does not allow an inmate to raise sufficiency-of-the-evidence challenges on state habeas review, *see Ex parte Christian*, 760 S.W.2d 659 (Tex.Crim. App.1988), the state courts found that his arguments were not cognizable. Nonetheless, the state habeas courts alternatively considered the merits of his arguments. The Court of Criminal Appeals adopted the lower court's findings with regard to the actual-innocence claim.

661

## CERTIFICATE OF APPEALABILITY

The AEDPA prevents appellate review of a habeas petition unless the district or circuit courts certify specific issues for appeal. *See* 28 U.S.C. § 2253(c); FED. R.APP. PRO. RULE 22(b). Burton has not yet requested that this Court grant him a Certificate of Appealability ("COA"), though this Court can consider the issue *sua sponte. See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir.2000). A court may only issue a COA when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

Clear and binding precedent forecloses relief on Burton's claims. Under the appropriate standard, Burton has not shown that this Court should authorize appellate consideration of any claim. This Court will not certify any issue for review by the Fifth Circuit.

## CONCLUSION

For the reasons described above, the Court finds that Burton has not shown an entitlement to federal habeas relief. This Court **DENIES** Burton's petition and **DISMISSES** this case **WITH PREJUDICE.** No Certificate of Appealability will issue in this case.

### *FINAL JUDGEMENT*

The Court **DENIES** Arthur Lee Burton's petition for a writ of habeas corpus and **DISMISSES** this case **WITH PREJUDICE.**